WILLIAM M. BAKER, Respondent, v. ALBERT A. DRAKE et al., Appellants.

The rule of damages in civil actions does not depend upon the form of the action. Whether it be in contract or in tort, the proper measure of damages, except where punitive damages are allowable, is a just indemnity to the party injured, for the loss which is the natural, reasonable and proximate result of the wrongful act complained of, and which a proper degree of prudence, on the part of the complainant, would not have averted.

A fixed, unqualified rule giving the plaintiff in all cases of conversion of property the highest market price from the time of the conversion to the time of trial, cannot be upheld upon any sound principle of reason or justice; and it cannot be regarded as one of those settled rules to which the principle of *stare decisis* should apply.

Where a broker purchases stock for a customer, not as an investment but upon speculation, the latter furnishing a small amount as a margin and the former supplying the residue of the capital embarked in the speculation; if upon being advised of an unauthorized sale of the stocks the principal desires further to prosecute the adventure, he has the right to disaffirm the sale and to require the broker to replace the stock, and upon failure or refusal to do this the remedy of the principal is to replace it himself; and the advance in the market price from the time of the sale up to a reasonable time to replace it, after notice of sale, affords a complete indemnity, and is the proper measure of damages.

The case of *Markham* v. *Jaudon* (41 N. Y., 235), so far as it relates to the rule of damages, overruled, and the decisions upon that question collated and discussed.

(Argued April 7, 1873; decided September 23, 1873.)

| 53 | 211 |
| 110 | 243 |
| 110 | 246 |
| 53 | 211 |
| 118 | 602 |
| 53 | 211 |
| 120 | 404 |
| 53 | 211 |
| 130 | 381 |
| 53 | 211 |
| 134 | 474 |
| 53 | 211 |
| 143 | 288 |
| 53 | 211 |
| 159 | 455 |

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought against defendants, who were brokers in the city of New York, to recover damages for an alleged unauthorized sale by them of 500 shares of stock of the Chicago and Alton Railroad Company's stock which they had purchased for plaintiff.

The facts, pertinent to the question discussed, appear sufficiently in the opinion.

*James C. Carter* for the appellants. The rule of damages laid down left no discretion to the jury and was incorrect. (*Scott* v. *Rogers,* 31 N. Y., 676, 679 ; *Suydam* v. *Jenkins,* 3 Sand. S. C., 614 ; *Brass* v. *Worth,* 40 Barb., 648 ; Sedgw. on Dam., 4th ed., 554, note.)

*James Emott* for the respondent. The rule of damages for the conversion of the stock was its highest price between the sale and the trial. (*Markham* v. *Jaudon,* 41 N. Y., 235 ; *Fisher* v. *Prince,* 3 Burr., 1363 ; *Whitten* v. *Fuller,* 2 Wm. Blk., 902 ; *Shepherd* v. *Johnson,* 2 East, 211 ; *Shaw* v. *Holland,* 15 M. & W., 136 ; *McArthur* v. *Ld. Seaforth,* 2 Taunt., 257 ; *Greening* v. *Wilkinson,* 1 C. & P., 625 ; *Forrest* v. *Elwes,* 4 Ves., 493 ; *Owen* v. *Routh,* 14 C. B., 327 ; *Bk. Montgomery* v. *Reese,* 26 Penn. St., 143 ; *Weymouth* v. *Chic. and N. W. R.,* 17 Wis., 550 ; *Cannon* v. *Folsom,* 2 Iowa, 101 ; *Douglass* v. *Kraft,* 9 Cal., 562 ; *Kid* v. *Mitchell,* 1 N. & McC., 334 ; *Ewing* v. *Blount,* 20 Ala., 694 ; *Cortelyou* v. *Lansing,* 2 Cai. Cas., 200 ; *Hart* v. *Ten Eyck,* 2 J. C. R., 62 ; *West* v. *Beach,* 3 Cow., 82 ; *Clark* v. *Pinney,* 7 id., 681 ; *Kortright* v. *Com. Bk. Buffalo,* 20 Wend., 91 ; S. C. in error, 22 id., 348 ; *Wilson* v. *Little,* 2 Comst., 443 ; *Dana* v. *Fiedler,* 2 Kern., 40 ; *Romaine* v. *Van Allen,* 26 N. Y., 309 ; *Scott* v. *Rogers,* 31 id., 676 ; *Burt* v. *Dutcher,* 34 id., 493.)

Rapallo, J. The most important question in this case is that which relates to the rule of damages. The judge at the

trial, following the case of *Markham* v. *Jaudon* (41 N. Y., 235), instructed the jury that the plaintiff, if entitled to recover, was entitled to the difference between the amount for which the stock was sold by the defendants and the highest market value which it reached at any time after such sale down to the day of trial.

This rule of damages has been recognized and adopted in several late adjudications in this State in actions for the conversion of property of fluctuating value; but its soundness, as a general rule, applicable to all cases of conversion of such property, has been seriously questioned, and is denied in various adjudications in this and other States.

This court has, in several instances, intimated a willingness to re-examine the subject, and in *Mathews* v. *Coe* (49 N. Y., 57), per CHURCH, Ch. J., stated very distinctly that an unqualified rule, giving a plaintiff in all cases of conversion the benefit of the highest price to the time of trial, could not be upheld upon any sound principle of reason or justice, and that we did not regard the rule referred to so firmly settled by authority as to be beyond the reach of review, whenever an occasion should render it necessary.

Whether the present action is one for the conversion of property of the plaintiff, or for the breach of a special contract, presents a serious question, but that inquiry is perhaps unimportant on the question of damages and will be deferred for the present, and the case treated as if it were one of conversion.

Regarding it in that light, the question is whether or not, under the circumstances of the case, the rule adopted by the court below affords the plaintiff more than a just indemnity for the loss he sustained by the sale of the stock. It is not pretended that the defendants realized any profit by the transaction, and therefore the inquiry is confined to the loss sustained by the plaintiff.

It does not appear that there was any express contract made between the parties, defining the terms upon which the defendants were to purchase or carry stocks for the plaintiff.

All that appears upon that subject in the evidence is, that the plaintiff, through his friend Rogers, deposited various sums of money with the defendants, and from time to time directed them to purchase for his account shares of stock to an amount of cost from ten to twenty times greater than the sums deposited; which they did. No agreement as to margin or as to the carrying of the stock by the defendants is shown by the evidence, but the plaintiff alleges in his complaint that the agreement was that he should deposit with the defendants such collateral security or margin as they should from time to time require; and that they would purchase the stock and hold and carry the same, subject to the plaintiff's direction as to the sale and disposition thereof, as long as the plaintiff should desire, and would not sell or dispose of the same unless plaintiff's margin should be exhausted or insufficient, and not then, unless they should demand of the plaintiff increased security, or require him to take and pay for the stocks, and give him due notice of the time and place of sale, and due opportunity to make good his margin.

The answer denies only the agreement to give notice of the time and place of sale, admitting by implication that in other respects the agreement is correctly set forth.

This is all that appears upon the record in reference to the contract under which the stocks were purchased.

The transactions under this contract appear in detail by a final account rendered by the defendants to the plaintiff, after the stock had been sold. This account was upon the trial admitted to be correct, the plaintiff reserving the right only to dispute certain charges of interest, which, however, if successfully assailed, would not vary the result to an extent sufficient to affect the reasoning based upon it.

From this account it appears that the plaintiff had, during the whole course of his transactions with the defendants, advanced in the aggregate but $4,240 toward the purchase of shares, which, at the time of the alleged wrongful sale, November 14, 1868, had cost the defendants upward of $66,300 over and above all the sums so advanced by the plaintiff.

By the stock lists in evidence it appears that these shares were then of the market value of less than $67,000, and the surplus arising from the sale, after paying the amount due the defendants, amounted to only $558, which sum represents the value at that time of the plaintiff's interest in the property sold.

It so happened, however, that within a few days after the sale the market price of the stock rose, and that at the time of the commencement of this action, November 24, 1868, the shares would have brought some $5,500 more than the sum for which they had been sold. But after the commencement of the action, and before the trial, the stock underwent alternate elevation and depression, and reached its maximum point in August, 1869, at which time one sale, of thirty shares at 170 per cent, was proved. It afterward declined, and on the day preceding the trial, October 20, 1869, the price was 143, having, for a month previous to the trial, ranged between 137 and 145.

The jury, in obedience to the rule laid down by the court, found a verdict for the plaintiff for $18,000, being just the difference between 134, which was the average price at which the defendants sold, and 170, the highest price touched before the trial; thirty-six per cent on 500 shares. More than two-thirds of this supposed damage, arose after the bringing of the suit.

This enormous amount of profit, given under the name of damages, could not have been arrived at except upon the unreasonable supposition, unsupported by any evidence, that the plaintiff would not only have supplied the necessary margin and caused the stock to be carried through all its fluctuations until it reached its highest point, but that he would have been so fortunate as to seize upon that precise moment to sell, thus avoiding the subsequent decline, and realizing the highest profit which could have possibly been derived from the transaction by one endowed with the supernatural power of prescience.

In a case where the loss of probable profits is claimed as an element of damage, if it be ever allowable to mulct a defendant for such a conjectural loss, its amount is a question of fact, and a finding in respect to it should be based upon some evidence. In respect to a dealing which, at the time of its termination, was as likely to result in further loss as in profit, to lay down as an inflexible rule of law that as damages for its wrongful interruption the largest amount of profit which subsequent developments disclose might, under the most favorable circumstances, have been possibly obtained from it, must be awarded to the fortunate individual who occupies the position of plaintiff, without regard to the probabilities of his realizing such profits, seems to me a wide departure from the elementary principles upon which damages have hitherto been awarded.

An amount sufficient to indemnify the party injured for the loss, which is the natural, reasonable and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the complainant would not have averted, is the measure of damages which juries are usually instructed to award, except in cases where punitive damages are allowable. Before referring to the authorities which are supposed to govern the question, I will briefly suggest what would be a proper indemnity to the injured party in a case like the present, and how greatly the rule under consideration exceeds that just limit.

The plaintiff did not hold the stocks as an investment, but the object of the transaction was to have the chance of realizing a profit by their sale. He had not paid for them. The defendants had supplied all the capital embarked in the speculation, except the comparatively trifling sum which remained in their hands as margin. Assuming that the sale was in violation of the rights of the plaintiff, what was the extent of the injury inflicted upon him? He was deprived of the chance of a subsequent rise in price. But this was accompanied with the corresponding chance of a decline, or, in case of a rise, of his not availing himself of it at the proper

moment; a continuance of the speculation also required him to supply further margin, and involved a risk of ultimate loss.

If, upon becoming informed of the sale, he desired further to prosecute the adventure and take the chances of a future market, he had the right to disaffirm the sale and require the defendants to replace the stock. If they failed or refused to do this, his remedy was to do it himself and charge them with the loss reasonably sustained in doing so. The advance in the market price of the stock from the time of the sale up to a reasonable time to replace it, after the plaintiff received notice of the sale, would afford a complete indemnity. Suppose the stock, instead of advancing, had declined after the sale, and the plaintiff had replaced it, or had full opportunity to replace it, at a lower price, could it be said that he sustained any damage by the sale; would there be any justice or reason in permitting him to lie by and charge his broker with the result of a rise at some remote subsequent period? If the stocks had been paid for and owned by the plaintiff, different considerations would arise, but it must be borne in mind that we are treating of a speculation carried on with the capital of the broker, and not of the customer. If the broker has violated his contract, or disposed of the stock without authority, the customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived. He certainly has no right to be placed in a better position than he would be in if the wrong had not been done.

But the rule adopted in *Markham* v. *Jaudon*, passing far beyond the scope of a reasonable indemnity to the customer whose stocks have been improperly sold, places him in a position incomparably superior to that of which he was deprived. It leaves him, with his venture out, for an indefinite period, limited only by what may be deemed a reasonable time to bring a suit and conduct it to its end. The more crowded the calendar and the more new trials granted in the action, the better for him. He is freed from the trouble of keeping his margins good and relieved of all apprehension of being

sold out for want of margin. If the stock should fall or become worthless he can incur no loss, but, if at any period during the months or years occupied in the litigation, the market price of the stock happens to shoot up, though it be but for a moment, he can, at the trial, take a retrospect and seize upon that happy instant as the opportunity for profit of which he was deprived by his transgressing broker, and compel him to replace with solid funds this imaginary loss.

No reasons are given, in the prevailing opinion in *Markham* v. *Jaudon*, in support of the rule of damages there laid down. All that is said upon the subject is, that the action is for the conversion of the stock, and that the rule of damages was correctly laid down by the court at the trial. And the cases of *Romaine* v. *Van Allen* (26 N. Y., 309); *Scott* v. *Rogers* (31 id., 676), and *Burt* v. *Dutcher* (34 id., 493), are cited as establishing that proposition. It will be well to refer for a moment to those cases, which are the only ones referred to by the court in *Markham* v. *Jaudon*, on the question of damages.

*Romaine* v. *Van Allen* was an action for the wrongful conversion, by a bank, of shares of stock actually owned by the plaintiff and deposited by him with the bank as security for a loan of money for which the plaintiff had given his personal obligation, with authority to sell the shares only in case the plaintiff should, on demand, fail to repay the loan. It did not appear that the shares were held for speculative purposes, but it was justly inferable, from the circumstances, that they were held for investment, and would have been retained by the plaintiff but for the wrongful sale. The bank sold the shares without any notice or demand of payment. On being informed of the sale, the plaintiff promptly refused to ratify it, and required the bank to replace the shares. Pending negotiations with that view the bank failed, and the defendant was appointed receiver. The plaintiff presented his claim to the receiver, demanding the highest price which the stock had reached up to the time of the claim, and giving notice that, if compelled to resort to an action, he should claim the

highest price down to the time of trial. The trial was had before a referee, and consumed from October 25, 1861, to July 25, 1862, a period of nine months. The stock reached its highest point on the 30th of June, 1862, and the price on that day was adopted in measuring the damages.

Remarks upon this case will be deferred until the others have been stated.

The next case cited is the later one of *Scott* v. *Rogers* (31 N. Y., 676), in which a different rule was sanctioned. In that case a sale of wheat by an agent was held to have been in violation of the instructions of his principal, and the agent was determined to be liable as for a conversion of the wheat. The action was not brought until more than four years after the alleged conversion, during which period there had been great fluctuations in the market price of the article. That case was twice argued, the court on the first argument being equally divided. The rule of damages finally adopted was that the plaintiff should be allowed the highest market price which the property reached between the time of the conversion and a reasonable time thereafter to commence the action, and under the special circumstances of that case, a finding that a period of about four months was such reasonable time was sustained. This rule necessarily limits the range of prices to a period prior to the commencement of the action, if brought within a reasonable time, and, if unreasonably delayed, then to the period within which it should have been brought, and, in either case, excludes prices prevailing after the commencement of the action. But it may be justly said that the question whether the prices prevailing after the commencement of the action could be considered was not directly involved in the judgment in *Scott* v. *Rogers*, as the judgment of the court below in that case limited the inquiry to a reasonable time within which to commence the action, and this court merely affirmed that judgment, which it might have done even had it thought the rule too favorable to the defendant, who was the only appellant.

Though the rule sanctioned in *Scott* v *Rogers* materially

differs from that adopted in *Romaine* v. *Van Allen*, the case of later date cannot be regarded as overruling the earlier.

*Burt* v. *Dutcher* (34 N. Y., 493) was an action for tortiously taking and converting hops belonging to the plaintiff, and the measure of damages was held to be the highest market price of the hops between the time of the taking and that of the trial. The amount dependent upon the rule of damages was very insignificant; the question was not discussed, but treated as definitely determined by the cases of *Romaine* v. *Van Allen* and *Scott* v. *Rogers*. This case adds no force to those decisions, but is dependent upon them. *Scott* v. *Rogers*, as has been shown, is not an authority in favor of the rule under consideration. *Romaine* v. *Van Allen* is the only one referred to in *Markham* v. *Jaudon* which gives substantial support to the conclusion there reached. The authorities upon which the decision in *Romaine* v. *Van Allen* was based, should, therefore, be examined. The first case referred to is *Cortelyou* v. *Lansing* (2 Caine's Cases in Error, 200). That was an action of assumpsit for the value of a certificate of public debt of the nominal value of $2,600, which had been pledged, under a written contract to restore it on repayment of a loan of $600 and interest, and had been unlawfully sold by the pledgor without demand or notice. The rule of damages adopted was the value of the certificate at the time at which the plaintiff demanded its restoration.

It may be as well to remark here as anywhere, that the rule of damages should not depend upon the form of the action. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort; except in those special cases where punitory damages are allowed, the inquiry must always be, what is an adequate indemnity to the party injured, and the answer to that inquiry cannot be affected by the form of the action in which he seeks his remedy. Chancellor KENT, in delivering the opinion of the Court of Errors (*Cortelyou* v. *Lansing*), though the action

was in assumpsit, seeks the rule of damages in the principle applicable to an action for conversion. He says: "The value of the chattel, at the time of its conversion, is not in all cases the rule of damages in trover. If the thing be of a determinate and fixed value, it may be the rule, but when there is an uncertainty or fluctuation attending the value, and the chattel afterward rises in value, the plaintiff can only be indemnified by giving him the price of it at the time he calls upon the defendant to restore it; and one of the cases even carries the value down to the trial." The case which Chancellor KENT here refers to is that of *Shepherd* v. *Johnson* (2 East, 211), and it is principally from a misapplication, if not misapprehension, in later opinions, of what was decided in that case, and in those of *McArthur* v. *Seaforth* (2 Taunt., 257), and *Harrison* v. *Harrison* (1 Carr. & P., 412), which followed it, that the doctrine of allowing the highest price at any time down to the day of trial has arisen.

Those three cases were all actions of debt on bonds conditioned for the return of government stocks loaned. It was assumed that the lender had them for investment. The rate of damages allowed was the price at the time of the trial, which was higher than that at the time the stock ought to have been returned; but there is nothing in these cases sanctioning the allowance of any higher price which might have prevailed at an intermediate day. The ground upon which the price at the time of trial was allowed, was that the plaintiff should be placed in the same situation in which he would have been had the stock been replaced at the stipulated time, and that the court would not act upon the possibility of his not keeping it, but upon the presumption that he would have retained it till the day of trial, and hence its price at that time was the proper indemnity.

This rule necessarily excludes any hypothetical damage based upon the supposed loss of an opportunity to sell the stock at an intermediate time. A claim for a similar loss was made in one of the cases cited (*McArthur* v. *Seaforth*), where, had the stock been replaced at the proper time, the

plaintiff might have availed himself of an option given by the government, of exchanging it for other stock which at the time of trial was of greater value than the stock loaned. But this claim was rejected, it not having been shown to be probable that the plaintiff would have made the exchange. *Greening* v. *Wilkinson* (1 C. & P., 625; also cited in *Romaine* v. *Van Allen*) is a brief *nisi prius* decision of Ch. J. ABBOTT in an action for the conversion of cotton warrants, in which he says that the amount of damages *is for the jury*, who *may* give the value at the time of the conversion or at any subsequent time *in their discretion*, because the plaintiff might have had a good opportunity of selling the goods if they had not been detained. This is the nearest approach to an authority in favor of *Romaine* v. *Van Allen* to be found in any of the English authorities cited, and although but a *nisi prius* decision, is entitled to great respect on account of the eminence of the judge who pronounced it. Still it falls short of sanctioning the doctrine that as a fixed rule the plaintiff is absolutely entitled to recover the highest price prevailing at any time before the end of the trial, without any evidence showing that it was even probable that he would have realized such price. Far from laying down any such rule, ABBOTT, Ch. J., says that the amount of damages is for the jury, who *may in their discretion* allow the value at a subsequent time to indemnify against the loss of an opportunity of selling. It is to be supposed that in the exercise of this discretion the jury are to be governed by the evidence, and that they must be satisfied that the plaintiff would have made the sale had the goods not been detained.

In *Kortright* v. *The Commercial Bank of Buffalo* (20 Wend., 91), the action was assumpsit for refusing to allow a transfer of shares of bank stock upon which the plaintiff had advanced money. The measure of damages adopted was the highest price between the refusal and the commencement of the suit. This was affirmed by the Court of Errors (22 Wend., 348), Senator VERPLANCK going further than the court below, and expressing the opinion that the defendant

was liable for the highest price before the trial; citing *West* v. *Wentworth* (3 Cow., 82), and *Clark* v. *Pinney* (7 Cow., 596).

These were actions for the non-delivery of merchandise in pursuance of a contract of sale, and the extreme rule was applied of allowing to the vendee, as damages, the highest value up to the time of trial. This rule was, however, strictly confined to cases where the purchase-price had been paid in advance, it being conceded that in the ordinary case where the price was to be paid on delivery, the only rule is the market value on the day appointed by the contract for their delivery. It cannot be disputed that this distinction, though questioned by high authority, has long been acted upon in this State in respect to contracts for the sale and delivery of goods. The reason upon which it is founded is that, where the purchaser has not paid for the goods, he may, on the refusal of his vendee to deliver, go into the market and buy goods of a similar quality, and that what it would cost him to do this is the just measure of his damages; but that where he has paid the purchase-money, it is unreasonable to require him to pay it a second time, and therefore all fluctuations in price should be at the risk of the vendor who refuses to deliver, while retaining the purchase-money. The very reasoning upon which these decisions are founded demonstrates their inapplicability to a case like the present, where the purchase-money of the stocks has not been paid by the complaining party, and the only additional payment which he would be required to make for the purpose of replacing the stocks would be such as was occasioned by the rise in the market price.

The case of *Allen* v. *Dykers* (3 Hill, 593; affirmed, 7 id., 497) is also referred to in *Romaine* v. *Van Allen*. Shares of stock had been deposited with the defendants as collateral security for a loan, for which a note on time was given, containing authority to sell the stock on non-payment of the note at maturity. The defendants sold a portion of the stock before the maturity of the note, and the plaintiff brought his

action to recover the difference between the value of the stock and the amount of the note. There was evidence, consisting of a book kept by the defendants, that they had been dealers in the stock and had realized $99.50 per share for some of it, which they had sold in the interim, and damages were awarded at that rate. In the Supreme Court the question of damages was not discussed. All that there appears upon the subject is in the opinion of NELSON, Ch. J., who says that he does not perceive any ground for interfering with the verdict because of the rule of damages adopted by the circuit judge, and in the Court of Errors the question of damages is not adverted to. Not much aid is to be derived from that case.

The most thorough consideration of the subject to be found in any reported case is contained in the extremely able opinion of DUER, J., in *Suydam* v. *Jenkins* (3 Sandf. Sup. Court Reports, 619 to 647), where that accomplished jurist reviews, with great discrimination, many of the cases here referred to, and others which have not been cited, and arrives substantially at the same conclusion as that reached by CHURCH, Ch. J., in *Matthews* v. *Coe* (49 N. Y.), that the highest price which the property has borne at any time between its conversion and the trial cannot in all cases be the just measure of damages. The reasoning contained in that opinion is of such force as to outweigh the apparent preponderance of authority in favor of the rule claimed, and demonstrates its fallacy when applied to the facts of the present case, whether the cause of action be deemed for conversion of property or the breach of a contract.

When we consider the opposition which this rule has constantly encountered in the courts, the variety of the judgments in the cases in which it has been invoked, and the doubting manner in which it has been referred to by eminent jurists, whose decisions are cited in its support, it cannot be regarded as one of those settled rules to which the principle of *stare decisis* should apply. (See *Starbuck* v. *Cortazzi*, 2 Cr., Mees. & Rosc., 165 ; 2 K. Com., 637, 11th ed., note; *Owen* v. *Routh*, 14 C

B., 327; *Williams* v. *Archer*, 5 Man., Gr. & Scott, 318; *Archer* v. *Williams*, 2 Car. & Kir., 26 ; *Rand* v. *White Mountains R. R. Co.*, 40 N. H., 79; *Brass* v. *Worth*, 40 Barb., 648; *Pinkerton* v. *Manchester R. R.*, 42 N. H., 424; 45 N. H., 545, and the able review of the subject in Sedgwick on Damages, pp. 550 to 555, note, 5th ed.)

It seems to me, after as full an examination of the subject as circumstances have permitted, that the dissenting opinions of GROVER and WOODRUFF, JJ., in *Markham* v. *Jaudon*, embody the sounder reasons, and that the rule of damages laid down in that case and followed in the present one is not well founded, and should not be sustained.

For this reason, without passing upon the other questions involved in the case, I think the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.