# TUNIS' EX'OR

## v.

## TORMEY.

*(Special Court of Appeals of Virginia, October, 1882.)*

[Virginia Law Journal, 1882, p. 628.]

### Brokers—Purchase of Stocks—Sale—Notice to Owner—Case at Bar.

A broker bought stocks for a customer on a "margin" of ten per cent. above their market values. The stocks depreciated, and the broker, after calling at the boarding-house of the customer and not finding him, sold the stocks without giving him any notice, and, after crediting the customer with the ten per cent. "margin" and the amount realized for the stocks, found a balance due him, for which he sued.

### Same—Sale of Stock without Notice to Owner—Measure of Damages—Case at Bar.

*Held*, although, under Markham *v.* Jaudon, 41 New York 235, the broker had no right to sell the stocks, except under judicial proceedings after due notice, and if a loss occurred by a sale in any other way, the customer was entitled to recover the highest market value between the time of the sale and the time of bringing suit, yet, as in this case, the broker credited the customer with the amount realized from the sale, and there was nothing to shew that the stock had been worth more at any time since the sale, the broker was entitled to recover the amount shewn by him to have been lost on the transaction.

### Cause Tried by Court—Right of Party to Certificate of Facts.

Although a jury may be waived and the whole matter of law and fact submitted to the court, yet either party has a right to object and except to the admission of testimony and to a certificate of the facts proved on an exception to the judgment rendered.

This was a writ of error to a judgment rendered by the circuit court of Norfolk city in a suit in which L. J. Tormey was plaintiff and Samuel Selden, executor of John E. Tunis, deceased, was defendant.

The facts sufficiently appear in the opinion of the court.

*Scarburgh & Duffield,* for the plaintiff in error.

*T. Taylor* and *John Dunlop,* for the defendant in error.

WINGFIELD, J., delivered the opinion of the court.

This was an action of *indebitatus assumpsit* brought by S. J. Tormer against the plaintiff in error for money advanced by the defendant in error for the purchase of certain stocks in New York for the testator of the plaintiff in error and at his request.

It appears from the evidence in the case, that Tormey, the plaintiff in the court below, a stock broker in the city of Baltimore, agreed to purchase for Tunis certain stocks in the New York market, and hold them in his own name, but for the use of Tunis, and that, in consideration thereof, Tunis agreed to pay down to Tormey ten per centum of the price of the stock, and if the value of the stock should decline in the market, Tunis was to make further payments to Tormey from time to time as there might be a decline, so, as at all times, the sum paid by Tunis, together with the actual market value of the stock, should exceed by ten per cent. the full amount of the purchase-money for the stock, so that Tunis (to use the terms of the trade) should always keep up a "margin," *i. e.,* ten per cent. in excess of the market value of the stock and money advanced. That Tormey did purchase the stock and hold it in his own name for the use of Tunis for some time, when it declined in market and depreciated so that its value and the amount advanced by Tunis, as a mar-

gin, when it was bought, did not amount to a sum equal to
ten per cent. over its market value, and it became necessary
for Tunis to make a further advance, in order to keep up his
margin of ten per cent., and when the decline took place, Tu-
nis could not be found at his boarding-house or elsewhere in
Baltimore, so as to notify him that he was required to make
a further advance on his margin, whereupon Tormey sold
the stock in the New York market, where it had been bought
originally, and it fell short of paying the original cost, and
for the amount of the deficiency this is brought.    It was fur-
ther proved that the object of the transaction on the part of
Tunis was a speculation, and that the stock was not purchased
for an investment, and it also appeared that it was the cus-
tom of stock brokers in Baltimore, when stock was purchased
and carried for a customer on a margin, and afterwards de-
clined in the market, for the broker to sell the stock when
the principal failed to keep his margin of ten per cent. over
the value of the stock in the market, as compared with its
original price.    When the case came on for trial, the parties
waived a jury and submitted the trial to the court upon the
law and facts.    During the trial, the defendant in the court
below moved the court to strike out certain parts of the dep-
ositions offered in evidence by the plaintiff in that court,
on the ground that the testimony objected to was, for vari-
ous reasons, specified, illegal and improper, but the court
overruled the motion, and the defendant excepted, and, upon
hearing the whole case, the court gave judgment for the
plaintiff, to which the defendant again excepted, and a bill of
exceptions was taken to both opinions of the court in which
the whole of the evidence given at the trial was embodied.
It was argued here by the counsel for the defendant in error,
that on the trial of a case in which the whole matter of law
and fact is submitted to the decision of the court, it is unnec-
essary, irregular and improper to object to the introduction
of or to move to exclude or reject evidence on the ground of

its insufficiency or illegality; that while such a course would be proper in a trial before a jury, it has no place when it is had before the court, as the court is presumed to regard and be influenced only by the legal evidence, and upon a party's excepting to the judgment of the court, the evidence, and not the facts proved, is to be certified, and the case is to be considered in an appellate court as if it were upon a demurrer to the evidence by the party excepting. I am not aware of such a rule, and it seems to me it would be improper to establish such a one, as it might in many cases deprive the party of all remedy where the case had been decided against him upon illegal evidence. If the judge should be mistaken as to the legality or admissibility of the evidence, an appellate court would not regard it unless it appeared to have been objected to in the court below, and upon a demurrer to evidence no question is raised as to its legality or competency, but the sole question is, Whether or no the evidence is sufficient to sustain the issue in behalf of the opposite party, so that unless the party can except in such on a trial to the introduction of evidence, if the judge should be mistaken as to the competency or legality of the evidence offered and should decide the case upon what he supposed was legal evidence, when in fact it was not, the loosing party, unless he can except to its reception, is without remedy. If the court is not influenced by the evidence objected to, it is very easy to state the fact upon the record, and there ought to be the less objection to the party's having the benefit of the exception in such a case, because in an appellate court, if there was other sufficient legal testimony to support the judgment, it would not be reversed, as would be the case on a trial before a jury where improper testimony had been admitted. In the view I have taken of this case, I do not think it makes any difference whether the testimony objected to was admitted or rejected; and I have said this much on the subject, because I

never knew the right to except in such a case questioned until now.

The principal question involved in this case is, whether Tormey had a right to sell the stock in question without notice to Tunis to increase his deposit when the stock had fallen in the market, so as to make it necessary for him to do so in order to keep up his margin of ten per cent. and without his consent to the sale. According to the decision in the case of Markham v. Jaudon, 41 New York Reports 235, and in several of the other cases there cited, the broker (Tormey) was a pledgee or pawnee of the stock so bought and held by him for Tunis as a security for the money over the ten per cent. margin advanced by him for Tunis to purchase it, and that the broker (Tormey) had no right to sell it except upon judicial proceedings or after a demand for the repayment of the sum advanced in its purchase and commissions and charges and reasonable personal notice to him (Tunis) of the intention to make such sale in case of default in payment; and further, that evidence of a custom and usage, that stocks so held might be sold by the broker without notice, whenever, by the fall of the stock in the market, the margin of ten per cent. deposit was exhausted, was inadmissible as being in direct conflict with the settled rule of law applicable to such case.

According to the rule laid down in that case, the broker (Tormey) was the creditor of his customer (Tunis) for the amount advanced by him, over the ten per cent. margin, for the purchase of the stock. Tunis, for whom it was purchased, was the owner of the stock, subject to the lien of (Tormey) the broker for the amount he had advanced for its purchase, for the security of which he held it as a pledge or pawn. Thus it seems that Tunis was the owner of the stock, subject to the lien of Tormey, for the money he had ad-

vanced for him for its purchase, for which it was pledged or pawned, and Tunis was the debtor of Tormey for the money advanced for its purchase, for which the latter had a present right of action which he might maintain without regard to his lien under the pledge or pawn of the stock.  The case of Markham v. Jaudon was a suit by the customer against the broker for the sale and conversion of stock held by him for the customer on a deposit or margin of ten per cent., and sold by the broker without notice, on the customer's failing to keep up his margin by a further deposit after the price of the stock had fallen in the market; in which it was held that the broker had no right to sell without legal proceedings, or a tender of the stock and a demand of payment of the sum due him for the advance and charges, and upon default, with reasonable notice of the sale, and that without such proceedings or demand, on a sale by the broker, the customer was entitled to recover of him the highest market price of the stock between the time of the sale and the time of the suit brought against him for the conversion.  Now, conceding, for the purposes of this case, that Tormey had no legal right to sell the stock in the way he did, and waiving the question whether the broker would not be excused from giving notice when Tunis could not, upon enquiry, be found at his usual place of abode or elsewhere in the city of Baltimore, and it could not be ascertained where he had gone, so as to send notice to him at the place where he had removed to, and that the evidence as to the custom in Baltimore to sell stocks under such circumstances, without notice (the evidence of), which the defendant in the circuit court had moved to strike out and exclude, was illegal, and did not establish the custom.

It would only follow that the broker, Tormey, would have a right of action for the money advanced by him to purchase the stock for Tunis, and Tunis would have an action against

Tormey for the sale and conversion of his stock, and would be entitled to recover in damages its highest market price between the time of sale and the trial; and if it had never attained any higher price than that at which it had been sold, he would not have been injured by the sale (for the amount of which he had received credit), and would not have been entitled to recover any damages.

Now, conceding that Tormey had no right to sell the stock in this case, how do the parties stand? Clearly Tormey had a right to recover the money advanced by him, and Tunis had a right to recover from him in damages for the conversion of his stock, its highest market price between the day of sale and the time of a suit for it. But instead of bringing his suit for the whole amount advanced, Tormey credited the amount of the sales and the ten per cent. deposit to Tunis, and brought his action for the balance. Now, supposing he could have had an offset for unliquidated damages, the most that Tunis could have claimed would have been the highest market price which the stock had attained; yet there is not a particle of evidence to show that it ever was worth a cent more than it was sold for and credited to the account of Tunis; so that whether it was sold by Tormey illegally and without authority or not, Tunis, for anything that appears in the cause, has sustained no injury by it, and if he could set off unliquidated damages against the demand of Tormey, he has sustained none to be set off.

Upon this view of the case, predicated upon the authority cited and relied on by the counsel of the plaintiff in error, it follows that the stock, when sold, belonged to Tunis, and there was no such executory contract between the parties in relation to it, as that Tunis might rescind, and demand the return of the money advanced by him in part of the purchase when it was first bought, as it is claimed in the petition he

had a right to do. Upon the whole, I think the judgment of the circuit court ought to be affirmed.

Judgment affirmed.

---

### NOTE.

The measure of recovery, for an unauthorized sale of stocks by a broker, as laid down in Markham *v.* Jaudon, *supra,* was overruled in Baker *v.* Drake, 53 N. Y. 211, wherein it was held, that the principal might disaffirm the sale and require the broker to replace the stock, and on the broker's failure to do so, may replace it himself, and the expense of so replacing it, in a reasonable time, is the proper measure of damages.—ED.