(139 App. Div. 557.)

McINTYRE v. WHITNEY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. TROVER AND CONVERSION (§ 44*)—MEASURE OF DAMAGES.

The general rule that damages for a conversion is the value of the thing converted at the time and place of the conversion, together with interest thereon from the time of the conversion should be adopted in determining the measure of damages for a conversion in the absence of special circumstances whereby it will not afford complete indemnity to the injured party.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 260, 261; Dec. Dig. § 44.*]

2. BROKERS (§ 6*)—RELATION BETWEEN BROKER—CUSTOMER.

A customer advanced a broker $5,000 to purchase stock on margin. The broker at the same time loaned to the customer $40,000 to purchase the stock. The stock was purchased and held by the broker with the right to sell on notice on the impairment of the margin by decline in the market. Held, that the relation between the customer and broker was that of debtor and creditor and pledgor and pledgee, though the broker purchased the stock as agent.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 4; Dec. Dig. § 6.*]

3. ACTION (§ 28*)—RECOVERY OF DAMAGES—WAIVER OF TORT.

An owner of stock purchased on margin by a broker for him need not waive the conversion of the stock by the broker in order to recover as damages the value of the stock at the time of the conversion since as to the damages it is immaterial whether the action is in tort or on contract.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. BROKERS (§ 38*)—MEASURE OF DAMAGES.

    A broker receiving $5,000 from a customer and loaning to the customer at the time $40,000 purchased stock, and carried it for the customer on margin. The broker converted the stock at a time it was worth $45,125. Subsequently the customer, without knowledge of the conversion, paid the broker $25,000 on the loan. Between the discovery by the customer of the conversion and reasonable time thereafter in which to replace the stock, its highest market price was $26.625. *Held*, that the customer suing for the conversion was entitled to the value of the stock converted at the time of the conversion, with interest from that time, less the amount of his indebtedness to the broker on the loan.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 36; Dec. Dig. § 38.*]

    Ingraham, P. J., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by John F. McIntyre against Girard N. Whitney and another, copartners, doing business under the firm name and style of Whitney & Kitchen, and another, as assignee for the benefit of the creditors of the copartnership of Whitney & Kitchen. From a judgment granting partial relief, plaintiff appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Thomas F. Gilroy, Jr., for appellant.
Joseph G. Dean, for respondents.

MILLER, J. Briefly stated, the facts of this case are that the defendants, Whitney & Geraghty, hereinafter referred to as the defendants, converted to their own use the plaintiff's stock, which they were carrying for him on margin, and which was worth at the time of the conversion $45,125; that thereafter he paid them $25,-000 in reduction of his loan without knowledge of the conversion; that, between the discovery by him of the conversion and a reasonable time thereafter in which to replace the stock, its highest market price was $26,625; that he then still owed the defendants $15,000, the balance unpaid on his loan; that when the defendants made a general assignment to the defendant Peck the plaintiff tendered the said sum of $15,000, still unpaid, to the defendants and the assignee, and demanded his shares of stock, which demand they were unable to comply with. The learned referee applied the rule established in Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, and gave the plaintiff a judgment for $26,625, less $15,000. By that rule, the plaintiff recovers about one-third of what he has paid the defendants in cash, most of it after the conversion, and the defendants pocket as profits the amount which the stock declined after the conversion, or $18,500. I think that it may confidently be asserted that the Court of Appeals have never decided or suggested that one guilty of conversion could profit by the decline in the market value of the thing converted between the time of the conversion and the discovery of it by the party injured. The general rule of damage of course is the value of the

thing converted at the time and place of the conversion, together with interest thereon from the time of the conversion, and that rule should be adopted in the absence of special circumstances, whereby it will not afford complete indemnity to the injured party.

The early cases made a distinction in case the property converted was of fluctuating value, so as to give the party injured the benefit of a rising market. The distinction was not confined to speculative stock transactions, and I perceive no reason for treating such transactions as sui generis. It was finally decided in Markham v. Jaudon, 41 N. Y. 235, in the case of a speculative stock transaction, that the customer was entitled to the highest market price of the property between the time of the conversion and the trial. That rule was limited in Baker v. Drake, supra, in which it was held that, upon discovering the conversion, the customer could not lie by and mulct the defendant for a conjectural loss, based upon the highest value which the stock might attain over an indefinite period thereafter, but that, if he wished to continue the venture and to charge his broker for the loss of speculative profits, it was his duty within a reasonable time to replace the stock thus adverting further damage. Judge Rapallo discussed the earlier cases, and it is therefore unnecessary to extend this opinion by reference to them. From his discussion, it is apparent that he was considering solely the right of the injured party to recover speculative profits in addition to what was realized by the broker from the unlawful sale. Apparently, he thought that there was a distinction between a purchase of stock on margin for speculation and a purchase outright for investment. That distinction was repudiated by Judge Peckham, writing for a majority of the court in Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356.

Undue prominence given to the fact that on the purchase of the stock the plaintiff advanced $5,000 and the defendants $40,000 results only in confusion of thought. When purchased, the shares of stock became the plaintiff's property precisely the same as though he had advanced the whole purchase price. In fact, he did advance the whole purchase price, borrowing for that purpose $40,000 of the defendants. The defendants took no risk of the speculation. They were at all times protected. If the margin became impaired by a decline in the market value of the shares, they could always sell upon notice to the plaintiff. I am unable to perceive how in principle there can be any distinction between a pledge of shares of stock to a broker as security for advances made by him with which to make the purchase, and a pledge of stock or other property to a bank for an ordinary loan. The relation between the plaintiff and the defendants was that of debtor and creditor, pledgor and pledgee. The fact that the defendants purchased the stock as agents for the plaintiff surely did not give them the right to convert it to their own use on the chance that it might decline in value, thereby enabling them to replace it at a profit.

I have examined every case in the Court of Appeals, decided upon the authority of Baker v. Drake, to which our attention has been

called. It is unnecessary to prolong this opinion by a citation of them, but, in every one, the customer got what the stock sold for; and the question considered was his right to recover in addition speculative profits, claimed to have been lost. In Colt v. Ownes, 90 N. Y. 368 which was relied upon by the learned referee the customer got the proceeds of the sale and the stock declined, wherefore it was held that he was not injured, and was only entitled to nominal damages. In Wright v. Bank of Metropolis, supra, Judge Peckham tersely sums up the case thus: "If the stock then sells for less than the defendant sold it for, of course the complainant has not been injured, for the difference in the two prices inures to his benefit. If it sells for more, that difference the defendant should pay."

Most of the cases in the books, dealing with the rule of damages, applied in Baker v. Drake, are cases of technical conversion, because of the failure to give notice of the sale. This is a case of misappropriation. The defendants converted to their own use the plaintiff's stock, and never thereafter had a like amount of stock to deliver to him. The conversion did not as matter of law extinguish his indebtedness to them. If, as a matter of fact, the stock had been sold for less than the amount of his indebtedness, they would have had a claim against him for the balance. Gruman v. Smith, 81 N. Y. 25; Capron v. Thompson, 86 N. Y. 418. His damages for the conversion and their claim against him for money loaned may therefore be treated as separate and distinct. Since the conversion, the defendants' claim has been reduced to $15,000, and they are entitled therefore to offset only that amount against his claim for damages.

There would be no question of the plaintiff's right to ratify the sale and claim the proceeds. But there was a conversion, a wrongful appropriation of his property to the use of the defendants. Surely, he is not obliged to waive the tort in order to recover as damages the value of the thing converted at the time of the conversion. So far as the rule of damages is concerned, it is wholly immaterial whether the action is in tort or on contract. Scott v. Rogers, 31 N. Y. 676; Baker v. Drake, 53 N. Y. 220, 13 Am. Rep. 507; Wright v. Bank of Metropolis, 110 N. Y. 246, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356.

While there is no authority in this state for applying the rule of Baker v. Drake to a case like this, there is authority the other way, a case decided soon after Baker v. Drake, the same learned judge writing in both cases. Taussig v. Hart, 58 N. Y. 425. That was an action brought by brokers against their customer to recover for advances—to be sure an action on contract. Among other issues in dispute was one arising upon the defendant's counterclaim for the conversion of 100 shares of stock—a case like this of actual conversion. The stock declined after the conversion, and the brokers bought in a corresponding number of shares on the decline; but it was held that they were not thus relieved from liability, that the customer was not obliged to take the stock, purchased by them on a declining market, to replace stock converted; that they could not convert their customer's stock and speculate upon replacing it at a

lower price; but that the customer was entitled to the value of the stock at the time of the conversion. Judge Rapallo said:

"He [referring to the customer] could ratify and claim the benefit of the sale, or claim the value of the shares on the day of the sale."

In this case, the plaintiff sues in conversion, claiming the value of the stock at the time of the sale, and the case last above cited is a square decision to the effect that he may do that.

Independently of the fact that the rule of Baker v. Drake, applied to a case like this, would permit the defendants to retain a large part of· the sum realized on the conversion of the plaintiff's property, the injustice of so applying it and its inapplicability become apparent upon further reflection. As already stated, the rule was intended solely to furnish indemnity to the customer for the loss of speculative profits. It is of course for the customer to determine· for himself when he will terminate his venture. He is not obliged to sell on a falling market. But for the defendants' wrong, their assignee would have had the plaintiff's shares to deliver to him upon demand. He could then have held them indefinitely, and the fact that he responded promptly to every call for additional margins, and, when the assignment was made, tendered the amount which he still owed and demanded his stock, strongly tends to indicate that that was his purpose. If he were seeking to hold the broker for loss of speculative profits, it would be entirely just to require him to replace the stock within a reasonable time after learning of the conversion so as to· limit the amount of such speculative loss, and the amount which he would have to pay to replace the stock would furnish complete indemnity for the loss of speculative profits. As Judge Rapallo put it in the case of Baker v. Drake, it would manifestly be unfair to permit him then to lie by and hold the defendants for the highest price which the stock might attain over an indefinite period thereafter. But it is a very different thing to require that, having already advanced $30,000, he should, upon discovering the conversion, advance $26,000 more or incur an indebtedness for that amount for the purpose of replacing the stock in order that the broker, who wrongfully appropriated it to his own use, might retain from the proceeds of the conversion a sum equal to the amount of the decline in the market value after the conversion. The bare statement of the proposition refutes it.

The defendants' wrong has prevented the plaintiff from continuing his venture as he intended to. He was not bound to embark in a new venture. He is not asking for the loss of speculative profits, and he is certainly entitled to the value of the property converted with interest from the time of the conversion, less the amount of his indebtedness to the defendants on their loan to him. The foregoing views are sustained by the recent decision of this court in Barber v. Ellingwood (decided April 8, 1910) 137 App. Div. 704, 122 N. Y. Supp. 369. The facts are not in dispute, and are found by the referee.

The judgment should be modified by increasing the amount of plaintiff's damages to $30,125, with interest on $5,125 thereof from

July 29, 1907, on $10,000 thereof from August 7, 1907, on $5,000 thereof from August 15, 1907, on $5,000 thereof from October 17, 1907, and on $5,000 thereof from October 23, 1907, and, as thus modified, affirmed with costs to the appellant.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice MILLER that there was a conversion of the plaintiff's stock; that the stock when converted was worth $45,125; and that the plaintiff is entitled to recover from the defendants the damages sustained by him by reason of that conversion. The complaint alleges that the defendants purchased this stock for the plaintiff on July 27, 1907, at $90 per share, for which the defendants paid $45,000, the purchase price of the stock, making the amount of their payment $45,000; that upon the same day plaintiff deposited with the defendants the sum of $5,000 as margin upon said transactions and as part payment of the purchase price of said shares; that the defendants agreed to advance to the plaintiff the balance of the purchase price of said shares and to hold the said shares as collateral security for such advance; that on the same day, July 27, 1907, the defendants converted the stock to their own use; that by reason thereof plaintiff has been damaged by the defendants in the sum of $45,327.50 less $15,000, advanced by the said copartnership remaining unpaid by the plaintiff; and demands judgment for the sum of $30,327.50.

.The defendants having converted the plaintiff's stock, and the conversion having consisted of disposing of the stock and receiving therefor a sum of money in excess of that for which the stock was purchased, plaintiff had an election to ratify and confirm this disposition of the stock and would then have been entitled to receive the price received by the defendants from the disposition of the plaintiff's stock, or he could treat the disposition of the stock by the defendants as a conversion and sue for the damages sustained by reason thereof. He elected to treat the disposition of the stock as a conversion, and sued for the damages sustained by him by reason thereof. The only question upon which I disagree with my Associates is as to the measure of damages to which the plaintiff was entitled.

As I understand the rule of damages in conversion, the transaction must be treated as of the time of the conversion, and, under the rule of damages as laid down in Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, the damages would be the difference between the value of the stock at the date of the conversion and the value of the stock at a reasonable time after the conversion within which the plaintiff could repurchase the stock. There has never been a time since the conversion at which the stock sold for a greater price than at the time of the conversion, and therefore this rule does not apply. In such a case the rule as I understand it is that the plaintiff would then be entitled to recover the value of his interest in the stock at the time of the conversion. The real situation disclosed was that the defendants had undertaken to purchase for the plaintiff 500 shares of this stock and

had actually purchased it for his account and paid therefor the sum of $45,000. Of that amount the plaintiff had paid $5,000, remaining indebted to the defendant for the sum of $40,000, for which amount the defendants had a lien upon the stock.

The referee found that on July 29, 1907, the defendants received the said 500 shares of stock so purchased for the account of the plaintiff, and on the same day delivered the said stock to another firm of brokers to fulfill an obligation of the defendants to deliver such stock to these brokers and received from said brokers the sum of $45,818.20. This sum must therefore be considered as the value of the stock at the time of the conversion. But the plaintiff's interest in the stock was subject to a lien in favor of the defendants for the sum of $40,000, and the plaintiff's interest therefore was the sum of $45,818.20 less $40,000, to which the defendants were entitled, for which sum plaintiff would have been entitled to judgment if the conversion had been then discovered and the action then commenced.

I cannot see that any act of either the plaintiff or the defendants subsequent to this conversion can have the effect of enhancing or reducing the amount of damage that the plaintiff sustained by reason of the conversion of the stock. The rights of the parties as dependent upon the conversion were then fixed, and when the plaintiff elected to treat this disposition of his stock as a conversion he was entitled to recover the damages that he then sustained by reason of the conversion, and that sum upon the undisputed facts was $5,818.20. This seems to be sustained by Baker v. Drake, supra where it is said:

"An amount sufficient to indemnify the party injured for the loss, which is the natural, reasonable, and proximate result of the wrongful act complained of * * * is the measure of damages which juries are usually instructed to award, except in cases where punitive damages are allowable. * * * The plaintiff did not hold the stocks as an investment, but the object of the transaction was to have the chance of realizing a profit by their sale. He had not paid for them. The defendants had supplied all the capital embarked in the speculation, except the comparatively trifling sum which remained in their hands as margin. Assuming that the sale was in violation of the rights of the plaintiff, what was the extent of the injury inflicted upon him? He was deprived of the chance of a subsequent rise in price. * * * Suppose the stock, instead of advancing, had declined after the sale, and the plaintiff had replaced it, would it be said that he sustained any damage by the sale; would there be any justice or reason in permitting him to lie by and charge his broker with the result of a rise at some remote subsequent period? * * * If the broker has violated his contract, or disposed of the stock without authority, the customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived. He certainly has no right to be placed in a better position than he would be in if the wrong had not been done."

What was converted was the stock subject to the lien. By the conversion the defendants became liable for the value of the stock less the lien, and having elected to treat the disposition of the stock by the defendants as a conversion, and having brought this action to recover his damages by reason of the conversion, I think that is the limit of the recovery. The subsequent payments by the plaintiff to the defendants could have no effect upon the damage sustained by the conversion. Undoubtedly for that money the plaintiff would have a cause of

action against the defendants, and in a proper action would be entitled to judgment for such payments. In this action, which is strictly for a conversion of the stock on the 29th of July, 1907, plaintiff's right to recover is limited, I think, to the damages sustained by that conversion upon the day when the stock was converted.

I am unable to agree, therefore, with the proposed modification of the judgment appealed from.