EDWARD M. WHITE, Respondent, *v.* SPENCER H. SMITH et al., Appellants.

Where a stock-broker agrees for a commission to be paid to him, and upon a deposit with him of a stipulated margin to make a short sale for a customer, the agreement is but partially performed by a sale; it is part of the bargain that the broker shall carry the stock for a reasonable time, as otherwise the object of the transaction would be defeated. The broker can close the transaction at any time, if, upon demand and notice, the margin is not kept good; and he may close it, upon notice, after he has carried the stock for a reasonable time. He has not the right, unless so expressly agreed, to buy in stock to cover the sale, without notice to or direction from his customer; and by so doing he becomes liable for any loss he thus occasions his principal.

On the eighteenth October defendants (stock-brokers), upon plaintiff's order and on his account, sold 300 shares N. Y. C., short, at 186. On the first November, without plaintiff's order or knowledge, they bought in stock to cover the sale. On the second November, stock having declined to 180¼, plaintiff ordered defendants to cover their sale, to which no attention was paid. In an action to recover the damages, *held,* that the proper measure of damages was the difference between the price at which the stock was sold short and the market price upon the day when the order was received to purchase, with interest, deducting commissions, etc.

(Argued September 20, 1873; decided January term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

The action was against the defendants as stock-brokers, to recover damages for disobedience of instructions.

Plaintiff, a resident of St. Louis, employed defendants as his brokers to operate in stocks in New York city, they to receive the usual commissions and interest, and to advance for plaintiff's account the cost of all stocks purchased for him, he to furnish the customary margin of ten per cent. Up to October 14th, 1869, T. D. Treadway acted as plaintiff's agent in New York, through whom he transmitted orders to defendants. On that day plaintiff wrote Treadway revoking his authority to act as agent, and stating that he

would " communicate directly " with defendants in the future. On the 15th of October plaintiff again wrote Treadway requesting him to inform defendants that his authority as agent was revoked, and to inform him (plaintiff) as soon as he had done so. On the day following, plaintiff, anticipating the mail, telegraphed Tredway to " sell 300 New York Central at 181 or over." The two letters and telegram were received October 18th, at the same time, by Treadway, who gave defendants the order to sell the shares short, and communicated the contents of the letter to defendants' firm. Defendants acquiesced in Treadway's withdrawal, and were informed that plaintiff would thereafter communicate directly with them. Defendants sold the 300 shares short, at an average of 186, on the same day. Plaintiff then had a margin of about $5,900, and it was not claimed that it was ever reduced below $3,000, or that any demand for further margin was ever made. On the first day of November, defendants fearing a rise in the stock, after a conference with Treadway, who told them that he " was not authorized to do anything in the matter," without the knowledge or authority of plaintiff, covered the short sale and bought in the stock. On the day following, the stock having declined to $180\frac{1}{4}$, plaintiff, not knowing that the stock had been bought in, telegraphed defendants " to cover the 300 shares." The defendants paid no attention to this order. The difference between 300 shares of New York Central railroad stock at the price at which it was sold short on the 18th day of October, 1869, and the same number of shares covered at $180\frac{1}{4}$ on November 2, 1869, deducting commission, revenue stamps, and adding interest, was $1,718.09, and this difference, the judge charged the jury, was the proper measure of plaintiff's damage, and the defendants excepted to this portion of the charge.

The defendants requested the court to charge that, for a failure to buy in the stock on plaintiff's order, the defendants, if liable at all, were only liable for nominal damages, and that the transaction being to sell stock which the plaintiff had not

got, was void. The court refused, and the defendants duly excepted. The jury rendered a verdict for said sum.

*Jno. E. Parsons* for the appellants. Plaintiff sustained no actual loss by defendants' failure to purchase the stock; and upon defendants declining to purchase, the law required plaintiff to do it himself. (*Worth* v. *Edmonds*, 52 Barb., 40; *Milton* v. *H. R. Stbt. Co.*, 37 N. Y., 210.) Had defendants agreed to sell the plaintiff stock, the measure of damages would be the difference between the market and contract price. (*Davis* v. *Shields*, 24 Wend., 322.) This difference is the extreme of what is recoverable in any such case. (*Peterson* v. *Ayres*, 13 C. B., 353; *Williams* v. *Reynolds*, 11 Jur. [N. S.], 793; *Powell* v. *Jessop*, 18 C. B., 336; *Shaw* v. *Holland*, 15 M. & W., 136; *Van Dieman's Land Co.* v. *Cockerell*, 1 C. B. [N. S.], 732.) If the rule of damages is to be applied on the principle of a breach of duty by an agent, the recovery must be limited to actual loss. (*Suydam* v. *Allen*, 20 Wend., 321; Sedg., 347 [marg.]; *Bell* v. *Cunningham*, 3 Pet., 68, 85; *Blot* v. *Boiceau*, 3 Com., 78.)

*Frederic A. Ward* for the respondent. The measure of damages, in case of the breach of duty by an agent, is the amount of loss the principal has sustained by the purchase or sale contrary to orders. (*Evans* v. *Root*, 3 Seld., 186; *Scott* v. *Rogers*, 31 N. Y., 684, 685; *Clark* v. *Meigs*, 10 Bosw., 337; *Le Guen* v. *Goveneur*, 1 J. Cas., 436; *Suydam* v. *Allen*, 20 Wend., 321; *Milbank* v. *Dennistoun*, 1 Bosw., 246; *Morris* v. *Summerl*, 2 Wash. C. C. R., 203; *De Tassett* v. *Cronsilliat*, id., 132; *Rundle* v. *Moore*, 3 J. Cas., 36; *Bell* v. *Cunningham*, 3 Pet., 69.) This was not the case of an executory contract, but of a contract partly executed by plaintiff, who would own the stock when purchased. (*Markham* v. *Jaudon*, 41 N. Y., 235.) No question, as to the legality of the sale, could arise. (4 Edmonds' Stat., 110.)

EARL, C. On the trial the defendants claimed that the plaintiff suffered no loss from their disobedience of his order, because he could have bought the stock in the market for the same price they could, and that the plaintiff should be defeated, because he had no right to insist that they should advance the cost of the stock which they were ordered to purchase. The court ruled that the proper measure of damages was the profit the plaintiff would have made if the defendants had obeyed his order, and instructed the jury that this was to be arrived at by comparing the price at which the stock was sold on the eighteenth day of October, with the price at which it could have been bought to cover the short sale on the second day of November, when the order to cover was given by plaintiff. There are two questions for our consideration: Whether the plaintiff was entitled to recover anything, and, if he was, whether the court laid down the proper rule of damages.

That the plaintiff was entitled to recover something, I can entertain no doubt. He had made an arrangement with the defendants, whereby they were to buy and sell stocks for him, he furnishing a margin of at least ten per cent, and paying them the usual commissions and interest on money advanced. On the 18th day of October, 1869, he had on deposit with them, as margin, about $5,900, and he ordered them to sell for him 300 shares of New York Central railroad stock. This order they at once filled for him, by what is called a short sale of 300 shares of the stock, at an average price of 186 per share. They borrowed the stock and delivered it to the purchasers. As nothing appears to the contrary, we must assume that the purchasers paid for the stock, and thus the defendants had, including the margin, over $60,000 to cover the short sale by buying in stock to replace that borrowed. By a sale of the stock, the transaction was but half completed. Every short sale is made by the seller with the contemplation of covering it when the market shall have declined, and for the purpose of making a profit by the decline. I believe, in such case, until the stock is bought in and the short sale covered, the

broker is said to carry the stock for his principal, and while he carries it he generally relies upon the margin placed in his hands as his security against loss by any advance in the market. I am of opinion that when a broker agrees, for a commission to be paid to him, and upon the deposit with him of a margin agreed on, to make a short sale for a customer, it is part of the bargain that the broker shall carry the stock for a reasonable time, for in no other way can the object of the parties be effectuated. A short sale to be covered immediately, without waiting for any decline in the market, would be a very idle transaction. The broker can, however, close the transaction at any time if the margin, upon his demand and notice, is not kept good; and after he has carried the stock for a reasonable time, thus affording his customer an opportunity to realize his expectations, he may, upon notice, close the transaction with his customer. But however this may be, the broker has not the right, unless it be specially conferred upon him, to buy in the stock, cover the sale, and thus close the transaction, without some notice to or direction from his customer. He is the agent of his customer, and must obey his orders both in making the sale and in covering it. If he acts without orders or against the orders of his principal he commits a breach of duty, and becomes liable, like any agent, for any loss he may thus occasion his principal. On the first of November the plaintiff's margin had become reduced to about $3,000, less than the ten per cent required by his arrangement with the defendants. But they had not made any demand upon him for more margin. On that day, without any notice to him, and without any authority from him, they bought in the stock and replaced the borrowed stock, and thus covered the short sale. The next day the plaintiff, without knowing what had been done, directed them to cover the sale, which they did not do and could not do, because they had disabled themselves from doing it. For this breach of duty they became liable to the plaintiff for any damage he suffered as the direct consequence thereof. (Story on Agency, § 217, c.)

It is no answer to plaintiff's claim for defendants to say that he could have gone into market on the same day and made the purchase of stock himself. He was far away from New York, and did not know that the defendants did not obey and were not willing to obey his order. Besides, the defendants had covered the sale the day before, and it could not be again covered by plaintiff on the second of November or any subsequent day. Neither is it any answer for defendants to say that the plaintiff did not furnish them any money to make the purchase. The contract required them to furnish the funds. But if it did not, what they realized when they made the short sale, together with the margin in their hands, was more than sufficient to enable them to buy stock to cover the sale. The very nature of the whole transaction was such that the plaintiff could not be required to advance any funds so long as he kept his margin good.

It is, therefore, quite clear that the plaintiff was entitled to recover something, and the next inquiry is how much. If the defendants had not disabled themselves from obeying the order, and had obeyed it, the plaintiff would have made the precise sum which the jury awarded him. The loss of this profit was the direct and proximate consequence of the defendants' breach of duty to the plaintiff, and I know of no rule of law that was violated by the measure of damages adopted.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.