(5 App. Div. 140.)

## KENNEDY v. BUDD.

(Supreme Court, Appellate Division, First Department. May 8, 1896.)

1. ILLEGAL USE OF DESIGNATION "& COMPANY"—RECOVERY OF CREDITS.
    Pen. Code, § 363, declaring guilty of a· misdemeanor one who transacts business, using the designation "& Company," when he had no partner, does not preclude one so carrying on business under such a firm name from recovering the amount of a credit which he gives in connection with the business.

2. STOCKBROKERS—PURCHASE ON MARGINS—LIMITATIONS.
    Where a stockbroker buys stocks for a customer on margins put up by the customer, the broker paying the balance due above the margins, and holding the stocks as security, no right of action accrues in favor of the broker, against the customer, on account thereof, till the stocks are sold on notice from the broker or customer.

Appeal from trial term.

Action by Everett M. Kennedy, as executor of Harvey Kennedy, deceased, against Margaret Budd. From a judgment on a verdict directed for defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John Brooks Leavitt, for appellant.

Carlisle Norwood, for respondent.

RUMSEY, J. The action was brought to recover a balance due to the plaintiff upon closing out a stock account between the plaintiff's testator and the defendant. The case is presented to us upon a bill of exceptions; the plaintiff having, with great care, inserted only so much of the evidence as is necessary to show precisely the rulings made, and the questions which are sought to be presented upon the appeal. This mode of preparing the case for review by the appellate court cannot be too highly commended. It relieves the court from the burden of examining a great mass of testimony in which, far too often, the questions sought to be raised are covered up, and presents the case for decision clearly and plainly. It is to be regretted that this manner of preparing cases, when the only question involved is one of law, is not more often resorted to.

Harvey Kennedy & Co., who were stockbrokers, began in the year 1887 to buy stocks for the defendant upon a margin advanced by her. Stocks were bought, with more or less frequency, down to the 8th day of October, 1888, at which time the last purchase was made. Harvey Kennedy, the broker, died in December, 1889; but the transaction does not seem to have been actually closed out until some time in 1892, when the plaintiff, as executor of Harvey Kennedy, upon notice to the defendant, sold out the stocks, and demanded of the defendant payment of the balance due as the result of the operation. Upon her refusal to pay, this action was brought. As the result of the action, the court ordered a verdict for the defendant, and from the judgment entered upon that verdict this appeal is taken. The verdict was ordered upon two grounds: First, that the claim was barred by the statute of limitations; and, second, that

Mr. Kennedy carried on business contrary to the provisions of section 363 of the Penal Code, and for that reason he could not recover against the defendant in this action. The only two questions presented are whether, for either of these reasons, the direction of the verdict was correct.

It appeared that, when the purchase of stocks for Mrs. Budd began, Harvey Kennedy was doing business under the name of Harvey Kennedy & Co., and that at that time he actually had partners interested with him. During the dealings with Mrs. Budd, however, the partnership ceased to exist, but nevertheless Kennedy continued business under the name of Kennedy & Co.; and it is insisted by the defendant that in so doing he rendered himself liable to punishment under section 363 of the Penal Code, which provides that any person who transacts business, using the designation "& Company," or "& Co.," when no actual partner or partners are represented thereby, is guilty of a misdemeanor. The defendant claims that as such a mode of transacting business is a crime, under the statute, the court will not, as a matter of public policy, permit one engaged in business thus contrary to the statute to maintain any action upon a contract thus made by him in defiance of the law. This statute has been regarded by the courts as a highly penal one, and it will not be extended to any case not clearly within it. Wood v. Railway Co., 72 N. Y. 196. The object of the statute is to protect persons giving credit to fictitious firms on the faith of the fictitious designation, and it is not needed to protect those who obtain credit from such a firm. For that reason it has been held that, where a firm thus carrying on business gave credit to one who dealt with it, it was not precluded by the fact that the designation was fictitious from bringing an action to recover the amount which was due to it from the person to whom it had thus given credit. Gay v. Seibold, 97 N. Y. 472. Within the authority of this case, the objection made by the defendant, that the plaintiff should not recover because Kennedy was engaged in business under a fictitious name, was not well taken.

A more serious question, however, arises upon the plea of the statute of limitations. The transaction between Mrs. Budd and Kennedy, as it appears from the case, was that Kennedy, at her request, bought stock for her upon margins, which she paid, and that he paid the balance due upon the stock, above the margins advanced by her, and held the stock as security for those balances. The claim of the defendant is that upon each purchase of the stock she became liable to pay to Kennedy the amount which he advanced to complete the transaction, and that a cause of action accrued to him at once for the amount so advanced. She says that, as the cause of action accrued immediately upon the advance of the money, the six-years statute of limitations began to run, and that consequently, as this action was begun more than six years after the last transaction was had, the right to recover was barred by that statute. Whether this position is well taken, or not, involves an examination into the nature of the contract between the parties, which quite clearly appears from the evidence spread upon the record. It was the ordi-

nary transaction in which a stockbroker, upon the employment of his customer, buys stocks upon a margin, and advances the money to pay, holding the stocks as security until such time as the customer may desire to have them sold. It was the usual contract between a stockbroker and customer for carrying stocks. That is quite clear from all the evidence in the case, and is not disputed by either of the parties. There has been considerable discussion in the books as to the precise relation which the stockbroker occupies towards the customer when such contract has been undertaken. It has been said that he occupies the position of agent, that he occupies the relation of pledgee, and that he was a trustee. Whether he does occupy either of these particular relations depends entirely upon the point of view in which the contract is examined. If we consider his duties as to the execution of the contract, he is undoubtedly an agent for his customer, as is stated in Galigher v. Jones, 129 U. S. 193, 198, 9 Sup. Ct. 335. If we consider his rights while he is holding the stock which he has bought as security for the advances which he has made, he undoubtedly occupies the position of pledgee. Markham v. Jaudon, 41 N. Y. 235; Gruman v. Smith, 81 N. Y. 25, 27. When we consider his duties as to the further performance of the contract after the purchase has been made, and recollect that he has no interest in the contract, except the commissions which he earns; that he is bound to act solely for the benefit of his customer, and bound to give her his best judgment, and to take no advantage of her,—it is quite clear that to that extent he acts in a fiduciary capacity. As was said by Judge Bradley in Galigher v. Jones, page 201, 129 U. S., and page 335, 9 Sup. Ct., a trust relation is the one which is deemed to exist between a stockbroker and his client. It has been said that he is a broker, because he has no interest in the transactions, except to the extent of his commissions; he is a pledgee, in that he holds the stock, etc., as security for the repayment of the money he advances in its purchase; so he is a trustee, for the law charges him with the utmost honesty and good faith in his transaction, and whatever benefit arises therefrom inures to the cestui qui trust. Dos P. Stockbrokers, 102. It will be perceived, therefore, that the contract itself is not strictly analogous to any one of those contracts mentioned above, and the duties which arise from it are something more than those which spring from any of the single contracts before mentioned. The contract is sui generis. It is one, however, which is recognized in the law; and when it has been shown to exist, as in this case, the law implies from the existence of it certain incidents, and charges the parties to it with certain duties, which are not necessarily expressed in the words of the contract. In that regard it is like the contract of indorsement, or that of guaranty. These incidents are now well settled in the law. They are enumerated in the case of Markham v. Jaudon, 41 N. Y. 235. That case, although it was overruled as to the rule of damages there laid down, is still, in all other respects, the law of this state. Gruman v. Smith, 81 N. Y. 25. And it may be referred to as establishing the rights of the parties to such a transaction. The rights and duties of the parties are laid down in that case by Judge Hunt, delivering

the opinion of the court, at pages 239 and 240. It is not necessary to refer to them all in this connection. Among other engagements made by the broker, Judge Hunt says that he agrees to carry and hold for the benefit of his customer the stocks bought by him, so long as the margin of 10 per cent. is kept good, or until notice is given by either party that the transaction must be closed, and to deliver the shares to the customer when required by him, upon receipt of the advances and commissions accruing to the broker. He says that the customer agrees, among other things, to take the shares so purchased on his order, whenever required by the broker, and to pay the difference between the percentage advanced by him and the amount paid therefor by the broker. It is said in another case that it is an essential part of the bargain that the broker shall carry the stock for a reasonable time, for in no other way can the object of the party be effectuated. White v. Smith, 54 N. Y. 522. In the same case it is said that the broker can close the transaction at any time, if the margin, upon his demand and notice, is not kept good; and if he has carried the stock for a reasonable time, thus affording the customer an opportunity to realize his expectations, he may, upon notice, close the transaction with his customer. The object for which the contract is entered into is to give the customer an opportunity, if the stock has been bought for his account, to hold it until the price shall have advanced so that he may make a profit out of the transaction. It is quite clear that this necessarily involves the idea that the contract is, to some extent, to be a continuing one, because, as is said by Judge Earl in White v. Smith, supra, a contract of that kind, which was immediately to be brought to an end, would be an idle one. The gist of the contract is that the broker shall carry the stock until such time as the customer shall have an opportunity to realize a profit from its advance, or until he shall give notice to the customer that he elects to bring it to an end. But in any event he is bound to carry the stock for a reasonable time, to enable the customer to ascertain whether or not he can make a profit on the transaction, if the customer shall pay, upon demand, whatever margins the broker is entitled to have. Such being the purpose of the contract, there is necessarily to be implied from it the principle that the customer is not expected to pay for the stocks thus to be carried until a demand for that payment has been made. The very object of the contract necessarily involves this idea. The broker is to carry the stock upon payment of sufficient margins to protect him from loss by a fall in value, and that necessarily involves the notion that he is not expected to receive any further sum on account of the stock until he shall have demanded it, or until the transaction has been closed. If that construction of the contract be a correct one, it necessarily follows that there was no right of action on the part of Mr. Kennedy for the amount advanced by him upon these stocks until he saw fit to close out the transaction, or it was closed out upon orders, by the customer. Nothing of that sort was done during his life. It may be that the contract was brought to an end by his death, which took place on the 9th of December, 1889, and that after that time it was the duty of his executor to close

out the transaction and settle with the defendant. But whether that be so, or not, certainly the business was not at an end at that time, but the contract was still an existing one; Mr. Kennedy still carrying the stock for the benefit of the plaintiff, and either of them having the right to put an end to it whenever they saw fit. No right of action had then accrued for the advances made by him, nor could it accrue until, by the act of one party or the other, the contract had been determined, and it had been ascertained which of the parties was indebted to the other, and the amount of that indebtedness. As the contract still existed, undetermined, up to within six years before the commencement of this action, the plea of the statute of limitations was not well taken, and the court erred in directing a verdict for the defendant upon that ground.

The case of De Cordova v. Barnum, 130 N. Y. 615, 29 N. E. 1099, is not adverse to this conclusion. In that case, instead of putting up a margin to protect the broker from loss, the customer had deposited shares of stock in the place of margin, upon the purchase of other stock of another kind. The stock, which had been bought for speculative purposes, had been sold, and the action was brought by the broker to recover the balance due to him upon the close of the transaction, which, of course, had resulted in a loss to the customer. It was claimed that the stock put up for a margin should have been sold before the action was brought for the balance, but the court held that as to that stock the parties occupied strictly and only the position of pledgor and pledgee, and that it was not necessary to sell the pledge before suing for the amount of the debt which the pledge was given to secure. The distinction between the two cases is obvious, and it is quite clear that the ruling in that case has nothing to do with the relations of the parties connected with the stock purchased for speculative purposes.

For these reasons the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.