WILDES et al. v. ROBINSON.

·(Supreme Court, Appellate Division, First Department. April 2, 1900.)

1. CORPORATE STOCK—SALES—MEASURE OF DAMAGES.
    The measure of damages, in an action to recover for the failure to deliver stock according to contract, is the difference between the price agreed to be paid therefor and its market value on the day on which it was to have been delivered.

2. SAME—EVIDENCE—MARKET QUOTATIONS—ACTUAL SALES.
    In an action to recover damages for failure to deliver stock according to a contract, evidence that the market quotation on such stock on the day on which it was to have been delivered was from 65 to 75 is not sufficient to show the value of the stock, where it was not shown that the quotations were based on actual sales.
    O'Brien and Ingraham, JJ., dissenting.

Appeal from trial term, New York county.

Action by Clarence H. Wildes and others against John M. Robin son to recover damages for failure to deliver stock. From a judgment in favor of plaintiffs and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Charles P. Howland, for appellant. ·

Henry A. Wise, for respondents.

RUMSEY, J. This judgment should be reversed because there was no sufficient evidence of damages. The measure of damages in this case is the difference between the price which the plaintiff agreed to pay for the stock on the 26th of February and its value on the 28th of February, the day on which it was to have been delivered. The transaction took place in New York. There is no evidence whatever that any dealings were had in this stock in this city. All that the plaintiff endeavored to show was that the stock had been dealt in in Philadelphia, and he gave some facts with regard to an offer made for it in that city. The witnesses stated that 71 was bid for the stock on the 26th of February, and that its market quotation on the 28th ran from 65 to 75. There was no evidence of the circumstances under which a bid was made,—whether it was in the open market, on the floor of the stock exchange, under such conditions as to warrant the conclusion that the person to whom the bid was made had any stock for sale, or that the person making the bid was in a situation to buy it. Such an offer as that is not, I think, any evidence as to the value of the property. It

was a mere unaccepted offer, in an isolated transaction, and it does
not appear that it was made in the market, attended by sellers and
buyers. Whitney v. Thacher, 117 Mass. 523, 527; Hanna v. Sand-
ford, 20 W. Dig. 288. It is quite true that market quotations, un-
der certain circumstances, are some evidence of value, but they only
have that effect where they are based on actual sales of the stock
quoted. There was no evidence in the case bearing upon the ques-
tion of damages, and, because the evidence given was entirely in-
sufficient to warrant the jury to find the value of the stock, the judg-
ment should be reversed.

Judgment reversed, new trial ordered, costs to appellant to abide event.

VAN BRUNT, P. J., and BARRETT, J., concur.

O'BRIEN, J. (dissenting). The action was brought to recover
damages for breach of a contract under which plaintiffs claimed
that they bought from the defendant 50 shares of the capital stock
of the William Camp & Sons Ship & Engine Building Company, at
$60 a share. The issues raised by the pleadings were the making
of the contract and the amount of damage suffered by reason of the
breach.

The evidence upon the issue of the making of a contract did not
so preponderate as to justify a direction of a verdict in defendant's
favor, and, the jury having resolved it on conflicting evidence in
plaintiffs' favor, their determination is conclusive.

The more serious question is whether or not there was sufficient
competent evidence to sustain the amount of damages awarded
of $350, which was equivalent to finding the fair market price to
be $67 per share. It is admitted that the measure of damages in
an action of this kind is the difference between the price of the
article as agreed upon and the money value of the article at the
time and place of agreed delivery. It appeared that the stock of
this company was not active, or one in which sales were made daily,
nor was it listed on the New York Stock Exchange. Sales, more-
over, were frequent, and, while there was no evidence of actual sales
on the day when the stock should have been delivered,—a fair in-
ference being that no sales occurred that day,—the plaintiff did in-
troduce evidence of those who were familiar with and dealt in the
stock as to what its value was on that date. In addition, there is
the testimony of one witness as to what actual bids for the stock
were made just prior to the close of the stock exchange in Philadel-
phia. Thus, one of the plaintiffs was asked, "Do you know what the
value of that stock was on the day it was to be delivered?" This
was objected to as incompetent, and the objection was overruled,
and exception taken. The question itself was entirely unobjection-
able, as it merely called for a statement by the plaintiff as to
whether he knew the value, which was a proper way of laying the
foundation for a subsequent question—assuming that he answered
in the affirmative—as to what he knew in reference to such value.
The answer was, "The market quotation of the stock on that day

was 65 to 75." This answer was neither proper nor responsive, and on either of these grounds the defendant's counsel might have asked to have it stricken out. That, however, he did not do, but contented himself thereafter with cross-examining the witness on the subject, when it appeared that the latter had considerable familiarity with the stock and its value. Another witness, examined on interrogatories, was asked, "State whether or not you know the market prices of the stock, * * * and, if so, state the same and the source of your knowledge." This, like the question already considered, was neither incompetent nor immaterial. In this instance, the witness having answered, "Just previous to the closing of the stock exchange in Philadelphia, at 3 o'clock p. m., as high as 71 was bid," the defendant's counsel moved to strike out the answer as not responsive. We think it was responsive to so much of the question as asked, in effect, just what he knew as to the dealings in the stock, and we think that the denial of the motion to strike out was proper. We must, however, consider the further objection that it was incompetent; and the question presented, therefore, is whether the transaction of the Philadelphia Stock Exchange, showing a bid for the stock at that time, was admissible or was any evidence of value.

A fair inference from the testimony is that this stock was dealt in more in Philadelphia than in New York; and, as it did not appear that there were any actual sales, we think that what was bid on the Philadelphia Stock Exchange was some, if not the most desirable, evidence of the then market price of the stock. Since it is the market price that is to furnish the measure of damages, the question in every case to be determined is, what was the market value? and the best evidence tending to show this is admissible. When there is a market price on the day and place of delivery, evidence thereof must be produced, for that is the best evidence of value, and evidence as to value on some other day, or at some other place, would not be competent. Thus, in Gregory v. Mc-Dowel, 8 Wend. 435, where the plaintiff proved the value of shingles contracted for at the place and time of delivery agreed upon, and the defendant was allowed to prove the value at other places, and from an average of prices to find the value, on appeal by the plaintiff a new trial was ordered; the court holding that the true rule of damages was the difference between the price as fixed by the parties on the day and at the place of delivery and the market value at the same time and place. See, also, Durst v. Burton, 47 N. Y. 167, to the same effect, that, where the evidence is explicit at the place of delivery, the value elsewhere is not strictly competent, and that where there is no other evidence a reference to distant markets is justified. Exchanges where the stock is dealt in are necessarily the places to which resort should be had for their market prices. Where there have been actual sales, then the rule that the best evidence must be produced would require that the prices for which the stock was bought and sold should be shown, for market value is but a conclusion of fact or a statement by one having knowledge of values derived from market prices. With

stock, however, as with other personal properties, some are active and some are inactive; and, where there have been no sales at a given time and place, it is necessarily impossible to furnish evidence of market value based upon prices as of such time and place. But where there are no sales, and consequently no market prices, it does not follow that the plaintiff is prevented from giving the best evidence of value which he is able to procure. As said in Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264:

"When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing on account of such uncertainty any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain."

In the present case the witnesses stated that transactions in this stock were spasmodic, and that it was one of the most inactive on the market; that it would sometimes be active, and at other times there would be nothing done in it for weeks and months; that there might be one sale in a day, or it might not be possible to make any sale on that day, except at greatly reduced figures. A fair inference from the testimony of the witnesses on the subject of value is that there were no actual sales at the exact time and place of delivery, and this inference is strengthened by the fact that neither upon the cross-examination, nor by any facts adduced by the defendants, were any actual sales shown. These witnesses, therefore, gave the best evidence of which the case was susceptible, namely, that of the only transaction in the stock,—the bid on the Philadelphia Exchange just before the close of business on the Saturday before the Monday when the stock was to be delivered. There being nothing to show any other or different bid or sale on Monday, we think that this evidence, being the best obtainable of the only transaction in the stock nearest in point of time when delivery should be made, was competent.

We can take judicial notice that the Philadelphia market is one in constant communication with that of New York, and, as the stock here in question was that of a corporation organized under the laws of the state of Pennsylvania, the circumstances are such as would make the prices of the Philadelphia Exchange next in order of preference to those of New York in determining the value; so that the rule that the price at the nearest market, in the absence of prices at the home market, will furnish the measure of damages, is applicable. In Harris v. Railroad Co., 58 N. Y. 660 (as stated in 1 Sedg. Meas. Dam. p. 586, note), "the plaintiff's race horse was injured while being transported across the Isthmus of Panama. The evidence showed that the horse could have been sold at the Isthmus at some price, but, properly speaking, there was no market price. The place of destination was San Francisco. Evidence of the value of the horse at San Francisco was admitted 'to enable the jury to estimate the value at the time and place of injury.' The court said that the market value at the time and place is the proper evidence of value, but that is reliable only where 'it appears that similar

articles have been bought and sold in the way of trade in sufficient quantity or often enough to show a market value.' It was further said that, in the absence of such proof, the market value in some other place is evidence." The decision rested upon the rule expressed in Simpkins v. Low, 54 N. Y. 179, where it was said that the value of certain bonds was not necessarily their face value, but all the circumstances which would go to make up their market value could be taken into account. A somewhat analogous case to the one at bar is that of Savercool v. Farwell, 17 Mich. 308, where the value of lumber at Detroit was the measure of damages, and the witness, who was a dealer in lumber at Wayne, 18 miles distant from Detroit, and who knew the market value of the lumber at Wayne, but not at Detroit, and said it was higher at Detroit than at Wayne, was allowed to give his evidence as to the value at Wayne. In view of the authorities cited, it is clear that, in the absence of any evidence as to the market value elsewhere, the quotations of the Philadelphia Stock Exchange would be admissible; and it is only necessary, therefore, to determine the weight to be given to an "offer or bid" when that is the only fact presented bearing upon the market value.

In Whitney v. Thacher, 117 Mass. 523, it was said:

"An unaccepted offer, as an isolated transaction, is not competent evidence upon the question of value. But, in a market regularly attended by buyers and sellers, an offer as well as a sale of an article of recognized uniform character, constantly bought and sold in that market, so as to have a place upon the daily prices current lists, may serve to show that the market value of that article did not then exceed the price at which it was offered. It is admissible because of its publicity, and the presumption of the presence of dealers ready to purchase, and who would have done so if the offer had been below the market value. That dealers themselves are guided in their transactions by such indications of the state of the market makes the fact one that may properly be considered in evidence."

And in White v. Smith, 54 N. Y. 522, 525, an action brought against a broker for damages arising from disobedience of instructions, Earl, C., approved the ruling of the court below, which held that:

"The proper measure of damages was the profit the plaintiff would have made if the defendant had obeyed his order; and instructed the jury that this was to be arrived at by comparing the price at which the stock was sold on the 18th day of October with the price at which it could have been bought to cover the short sale on the 2d day of November, when the order to cover was given by the plaintiff."

Evidently the price at which the stock "could have been bought" would be shown by what persons offered to sell it at, even were there no purchases. What has been said of "offers" is all the more true of "bids," as bearing on the market price; for, though an "offer" is often above the real value, a "bid" is generally less than the actual worth. Under the circumstances here appearing, therefore, we think that the evidence as to the bid made on the Philadelphia Stock Exchange, just prior to the time agreed upon for the delivery of the stock, was properly received.

Other exceptions taken to portions of the plaintiffs' evidence relate to the fact that one of the plaintiffs and the defendant were

permitted to testify that, upon request of the former, the signature "J. M. Robinson," indorsed upon the certificate when the contract was entered into, was changed to "John M. Robinson," and that at that time the names of Sara Y. Stevenson and Elizabeth E. Easby, with their addresses, were not upon the certificate. This evidence was not incompetent. It amounts to a mere recital of what took place at the time of the transaction here in dispute, and as showing what then occurred and what was done with the certificate, and thus forms part of the res gestæ.

We think, therefore, that the judgment and order appealed from should be affirmed, with costs.

INGRAHAM, J., concurs.