(120 App. Div. 833)

### HURT v. MILLER et al.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

**1. BROKERS—UNAUTHORIZED SALE.**

A stockbroker bought for a customer a contract for future delivery of cotton, and appropriated without authority a part of the sum advanced by the customer as margin to the payment of a contested indebtedness. On a fall in the market the broker sold the contract, because the remaining part of the sum was insufficient to maintain the margin. *Held*, that the sale was unauthorized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 33.]

**2. Same—Damages.**

A customer, on receiving notice of an unauthorized sale by his broker of a contract for future delivery of cotton, wired the broker to replace the cotton. The broker replied the same day that it was too late; that the cotton was closed because the margin was exhausted. The customer on the same day asserted that the margin was not exhausted, and declared that he wanted his contract back. The broker replied on the same day that the margin was exhausted, but that, if he wanted him to buy a contract, he would do so. The customer, in reply, stated that he claimed to hold a contract with the broker, and that when the time came he would request the broker to cover the same. Two days later the broker replied by reiterating his claim that the sale had been made because the margin was exhausted. Two days later the customer replied by insisting that the broker would be held liable for the transaction. *Held*, that the customer's measure of damages was the highest market price of a similar contract between the date of sale and the date the broker received the customer's last letter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 36.]

Laughlin and Clarke, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by William H. Hurt against Abraham P. Miller and another, partners as Miller & Co. From a judgment for plaintiff on a verdict in his favor directed by the court, defendants appeal. Conditionally reversed.

Argued before McLAUGHLIN, INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles E. Rushmore, for appellant.
William King Hall, for respondent.

LAUGHLIN, J. This was an action by a customer against a firm of stockbrokers to recover damages for an unauthorized sale of a contract for the delivery of cotton at a future date. Pending the appeal the original plaintiff died, and the action has been revived and continued in the name of this ancillary executor.

On the 9th day of December, 1903, the defendants purchased for the plaintiff on the New York Cotton Exchange a contract for the delivery in the month of March thereafter of 500 bales of cotton at 12.3 cents per pound. The plaintiff at that time owed the defendants a balance of account on former stock transactions. The plaintiff advanced $1,000 as margin on the new purchase, but the defendants without authority credited the $1,000 to the plaintiff's existing account with them, thereby appropriating part of it to the payment of the old indebtedness. The next day, December 10th, the market price of March cotton took a downward turn, and on wiring the plaintiff, who resided in Tuskegee, Ala., for further margins, and not receiving a remittance, they sold the contract at 12.15 cents per pound, upon the theory that plaintiff's margin was exhausted, which would have been the fact, were they justified in thus appropriating part of the $1,000 to the payment of the old indebtedness, but otherwise not. The plaintiff had not conceded his liability for the balance of account claimed by the defendants, and it is quite clear that he advanced the money as margin on the new contract, and that the appropriation of part of it by the defendants to the

payment of his existing indebtedness to them was unauthorized. The sale of the contract was, therefore, unauthorized.

On the same day, and immediately after selling plaintiff's contract, the defendants wired him:

"Sold five hundred March twelve fifteen on stock."

The defendants showed that plaintiff, in his former dealings with them, had directed them generally to sell when his margin was exhausted, and that the stop order mentioned in the message had reference to that authority. Upon receiving notice of the sale, plaintiff wired defendants the same day:

"Replace cotton. I sent no order stop at twelve fifteen."

To this defendants replied the same day:

"Too late your cotton was closed when margin exhausted as per previous message."

Plaintiff replied to this message on the same day:

"I don't understand why this contract was closed. Margin was not exhausted. I want my contract back."

The defendants wired in reply to this on the same day as follows:

"You wrote us distinctly months ago when margin exhausted we should have closed contracts. Your margin was exhausted when we sold cotton. Now do you want us to buy back five hundred March cotton. If so glad to buy it. Answer quickly."

The plaintiff did not reply to this by wire, but on the same day wrote the defendants as follows:

"I cannot at all understand why you closed my March contract to-day. You bought at 12.30 and covered without instructions at 12.15. I had placed to your credit as margin $1,000. You wired you closed on stop. If you had any stop order from me, there certainly is a grievous mistake, as I sent none. You say margin was exhausted. I do not see how you arrived at this conclusion. The only way I can see that you decided margin was exhausted was that when you received this $1,000 as margin on this contract you appropriated a part of it to pay yourself a balance you claim against me. If this is true, if you did this, you did not notify me of it, and left me under the impression I had $1,000 margin. You wired this morning for additional five hundred March, then quoted here at 12.19. I could see no immediate necessity for sending it just then, but wired you on further decline 'will send margin asked.' A few minutes later, next call here, I saw March was 12.23. Immediately I had bank to wire you $500 additional margin. Afterwards I received your telegram saying you had sold five March at 12.15 on stop. Now, gentlemen, is this the manner to treat a customer? Have you no regard whatever for his in' t? I claim I hold a contract with you for five March bought at 12.30, and when the time comes I shall request you to cover the same."

On the 12th day of December, the defendants replied to this letter, reiterating their claim that plaintiff had authorized them to sell when the margin was exhausted, and asserting that they supposed that he intended to pay them the money he owed them, and that they had acted in what they deemed to be his interest, and closed the letter as follows:

"You treated us very badly before, to say the least of it; and we will thank you now to place your business somewhere else in the future."

Two days later the plaintiff replied to this letter, insisting that defendants had not given a satisfactory reason for closing his contract, and that the only future transaction he would have with them—

"is the settlement of this contract. I assure you it will not rest here, if there is any law by which you can be reached."

The plaintiff testified that he had access to the market quotations on cotton at Tuskegee, and that quotations were received there every 15 or 20 minutes on each market day; that he knew the fact from day to day that the market was going up from December 10th until the 24th of December, and testified that on the 24th day of December "the market had a great rise. On that day I cannot say exactly that I had concluded that the market had reached the top, but it looked to be about as if it got high enough," and thereupon he wired the defendants: "Sell five March to cover"—to which defendants replied:

"You have no March to sell. Reported sale of five at twelve fifteen on December tenth."

The transactions between the parties consisted of telegrams and letters, the material parts of which have been stated. According to a stipulation in the record, the market price for March cotton closed on December 10th at 12.20–21. The highest price on the 11th was 12.42; on the 12th, 12.50; on the 14th, 12.43; on the 15th, 12.46; on the 16th, 12.46; on the 17th, 12.80; on the 18th, 13.04; on the 19th, 13.25; on the 21st, 13.17; on the 22d, 13.47; on the 23d, 13.69; and on the 24th, 13.81. The court ruled as matter of law that the plaintiff was entitled to recover the highest price at which similar contracts sold on the market on the 24th day of December. We are of opinion that this was error. The plaintiff failed to show a single fact or circumstance indicating that he required any time for deliberation, to determine what action to take with respect to the unauthorized sale of his contract by the defendants. The facts being undisputed, the question of reasonable time for the customer to decide what action to take concerning a conversion of his stock or unauthorized sale of a contract by brokers becomes a question of law for the decision of the court. The defendants evidently acted in good faith. Upon learning that plaintiff repudiated their sale of the contract, they immediately offered to repurchase a similar contract, and probably could have purchased at 12.20, the price at which the market closed that day. He therefore required no time to raise funds, for they were apparently willing to repurchase without further margin. His letter to them of December 10th, the day on which his contract was sold, shows that he required no further time to determine what course to take, and that he had then determined upon a course, which was that he would not buy any further contract or authorize them to replace it, but that he intended to speculate at their expense by holding them to the contract and in damages for the difference between the price they received on the sale and the price at some indefinite future time when he should decide to sell the contract.

The reason for the rule giving a customer a reasonable time after an unauthorized sale of stock by brokers, assuming that it applies to an

unauthorized sale of such a contract, within which to determine what course to pursue, and for giving him the highest market price at which the stock is sold within such reasonable time after the unauthorized sale (Giggs v. Day, 158 N. Y. 1, 52 N. E. 692; Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 70, 1 L. R. A. 289, 6 Am. St. Rep. 356; Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507; Burhorn v. Lockwood, 71 App. Div. 301, 75 N. Y. Supp. 828), cannot avail the plaintiff on the facts of this case, to warrant a recovery for the highest market price of similar contracts within the period of two weeks after the unauthorized sale; for, as has been observed, he determined upon his course of conduct immediately, and required no time either to consult counsel, to watch the market, or to raise funds. The negotiations between the parties were practically terminated by the letter of the defendants to the plaintiff and his answer to them on the 14th, which probably reached them by the 16th. We are of opinion that the plaintiff could not speculate on a rise of the market, after this period, at the expense of the defendants, and that his damages should be considered fixed by the highest market price betwen the 10th and 16th, which was 12.50 on the 12th. Unless, therefore, the plaintiff is willing to stipulate to reduce the recovery to $875 and interest thereon, the amount to which he would have been entitled upon the basis of 12.50, the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff shall stipulate within 10 days to reduce the recovery to $850 and interest thereon; and, if he shall so stipulate, the judgment is modified accordingly, and as modified, affirmed, without costs.

INGRAHAM and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). I dissent. Plaintiff was entitled to the benefit of his contract. He waited 14 days, which, under the facts set forth, was not an unreasonable time. He has recovered no more than he is entitled to, and for that reason the judgment and order appealed from should be affirmed.

CLARKE, J., concurs.