ALFRED H. NEWBURGER and Others, Appellants, *v.* SOL D. LEVINSON, Respondent.

First Department, March 4, 1921.

Contracts — action by stockbrokers to recover balance due on marginal account — rights of broker where customer repudiates order to sell stock short — erroneous charge.

In an action by a firm of stockbrokers to recover a balance due on a marginal account it appeared on the part of the plaintiff that the defendant gave an order to sell 100 shares of stock short and on the next day gave an order to sell another 100 shares of the same stock short; that they gave defendant notice of said sales; that the plaintiffs demanded at different times that the defendant cover the deficit in his account and that they later, after notice, purchased 200 shares, at an advance, to cover the short sales. The defendant contended that the second order given was one to purchase to cover the first order to sell; that upon receiving notice of a deficit he saw plaintiffs, discovered their mistake, and repudiated the transaction. No evidence of the daily course of the market after the defendant was notified of the deficit was introduced but there was an incidental reference to the price on one day.

*Held*, that it was error for the court to so charge the jury that the verdict for the defendant may have been rendered, not on the theory that the second order was one to purchase, but on the erroneous theory that the plaintiffs should have purchased before they did and at a price which would have left a credit balance on their books in favor of defendant.

The plaintiffs had the right to accept defendant's repudiation and to take for their own account the repudiated but authorized transaction, and to purchase to cover for their own account without notice to the defendant, but in that case they would have been obliged to give the defendant the benefit of the second order as though they had promptly executed it as an order to purchase.

If the plaintiffs were right in their contention that both orders were to sell then it was not their duty, after the defendant had repudiated the second order, to use reasonable efforts to reduce the loss, but they had the right to continue to carry the account till the defendant gave them an order to purchase to cover the short sale, and they had the right to call on the defendant for further margin, and on his failure to comply they were within their rights in purchasing the stock at the market, at the time and place specified in the notice, to cover the short sales.

APPEAL by the plaintiffs, Alfred H. Newburger and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York

on the 22d day of January, 1920, on the verdict of a jury, and also from an order entered in said clerk's office on the 23d day of January, 1920, denying plaintiffs' motion for a new trial made upon the minutes.

*Osmond K. Fraenkel* of counsel [*Louis Werner*, attorney], for the appellants.

*David Vorhaus* of counsel [*House, Grossman & Vorhaus*, attorneys], for the respondent.

LAUGHLIN, J.:

The action is brought by a firm of stockbrokers against a customer to recover $4,576.35, an alleged balance of a marginal account. The complaint set forth an account between the parties commencing on the 23d of July, 1919, and continuing until the tenth of October of that year; but the plaintiffs, recognizing that the controversy between them and their customer was over the execution of an order given by him on the 29th of August, 1919, which he claimed involved an order given the day before, omitted from the accounts two items relating to the execution of orders on August twenty-eighth and twenty-ninth, and alleged their claims with respect thereto separately as follows: That on the twenty-eighth of August, at the request of the defendant, they sold 100 shares of American Sumatra Tobacco short at seventy-eight and one-half per share and that on the next day they *sold* another 100 shares of the same stock short on the defendant's order at eighty-two and three-eighths per share. The giving and execution of the first of those orders were admitted, but the giving and execution of the other were denied, and the defendant alleged that it was an order *to buy* to cover the short sale made the day before, and he testified that the plaintiffs reported to him verbally the same day that it was so executed at the price at which they, instead, made the short sale.

If the order given on August twenty-ninth was to purchase to cover the prior short sale, as claimed by the defendant, he would have had a credit balance with the plaintiffs and they would have no cause of action against him; but if, on the other hand, it was an order to sell short, then the brokers would have been carrying for him sales of 200 shares short,

First Department, March, 1921.			[Vol. 195.

and there would be a balance owing to them, as they claimed, provided they were entitled to charge the account of the defendant with the amount they paid on the eighth of October thereafter to purchase to cover the two short sales. The plaintiffs alleged and gave evidence tending to show that they gave the defendant due notice in writing of the execution of the disputed order as a short sale; but he denied that he received any notice with respect to the execution of that order other than a verbal notice that they had executed it as an order to purchase. Plaintiffs also alleged and showed that they duly notified defendant in writing on the sixth of October that, on the opening of the market on the eighth, they would purchase to cover the two short sales unless before that time he furnished them with stock to cover said sales, and that he failed so to do, and that at the time specified they purchased 100 shares at 110½ and the other 100 shares at 111, and charged his account with the purchase price and commissions. Defendant admitted the receipt of that notice, but he disregarded it, on the theory that the order of August twenty-ninth was to purchase; and he denied responsibility for the purchases so made by the plaintiffs on the eighth of October. Prior to giving the notice of sale, the plaintiffs on September seventeenth notified the defendant in writing by mail that his account showed a deficit and that they required a cash payment of $4,000. He testified that he received that notice and called on the plaintiffs the next day and protested that there must be some error, and then for the first time discovered that they claimed that he was short those 200 shares, which he denied and insisted that he had only sold 100 shares short and that he covered it the next day. On the twenty-fourth of September, and on the third of October, the plaintiffs again in writing by mail demanded further margin, which was not furnished, and on the sixth of October they gave the defendant the notice in due form, pursuant to which they purchased the 200 shares on the eighth of October to cover the two short sales.

These were the only issues presented by the pleadings or by the evidence. No evidence of the daily course of the market after the dispute arose between the parties on the eighteenth of September concerning the order of August twenty-ninth was introduced by either party, and there was only an incidental

reference in the testimony with respect to the market price on one day between the eighteenth of September, when the dispute arose, and the time plaintiffs purchased the 200 shares on the eighth of October. That testimony was given by the defendant in relating a conversation at the office of the plaintiffs on September twenty-fifth between him and the plaintiff Lester Newburger, in which Newburger reiterated the claim that he was short 200 shares and he insisted that he was not. He was then asked how high and how low the stock had sold between August twenty-ninth and September seventeenth, and he said that it had been as low as eighty-three and had been up around ninety-two; and later on in testifying concerning the same interview, but without having been asked about the market price of the stock, he said, " Sumatra that day was around about 85 and then it had gone down a little," and that he told Newburger that if he was short 200 shares, his account did not warrant the plaintiffs in carrying it and that it was strange, inasmuch as they knew nothing of his financial condition and this was a dangerous stock, since it moved sometimes from fifteen to twenty points, that they carried the account two weeks without letting him know. After so testifying and in giving the same conversation, he said that he told Newburger that the plaintiffs might cover to protect themselves if they wanted to but that he had nothing to do with the transaction and did not assume any responsibility; and that at the time he was there in the plaintiffs' office talking with Newburger, he remembered distinctly that the stock was selling at ninety and one-half or ninety-one.

The court in submitting the case to the jury first instructed them that if the order of August twenty-ninth was to buy to cover the short sale of the twenty-eighth, there could be no recovery; and if it was to sell, plaintiffs were entitled to recover the amount claimed. These instructions properly presented the issues arising on the pleadings which were the only issues on which the evidence afforded a basis for a verdict; but thereupon the court, without any request on the subject from either party, charged that even though the order of August twenty-ninth was for a short sale as claimed by the plaintiffs, still it was for the jury to determine whether or not plaintiffs, knowing that defendant had repudiated the short sale of

First Department, March, 1921.          [Vol. 195.

August twenty-ninth, acted properly in waiting from September seventeenth until October eighth, and then buying for the account of the defendant and charging him the difference, and instructed the jury that if plaintiffs acted in good faith and with reason, defendant could not complain, but that if they waited too long and the delay was improper and not in the interest of the defendant, then they ought to find for the defendant. Counsel for the plaintiffs duly excepted to those instructions and to the court's leaving any question of good faith or reasonableness of time or of the action of the plaintiffs to the jury. Thereupon, without waiving his exceptions, counsel for the plaintiffs asked the court to charge that if the jury were to be permitted to consider these matters, their verdict should not be for the defendant but should be for the plaintiffs, on the basis of what it would have cost them to purchase to cover within a reasonable time after defendant denied that the order of August twenty-ninth was to sell. To that the court replied: " I would charge that, if there was any evidence   *   *   *   as to what the market rate was between September 17th and October 8th; " whereupon counsel for the defendant said that there was such evidence and that the defendant had testified that the stock sold as low as eighty-six during that time. Counsel for the plaintiffs denied that, and the court, without having the testimony read, disposed of the matter by saying: " I will charge as you request, if that evidence is in the case." Counsel for the plaintiffs requested the court to have the jury render a special verdict on this new issue, but the request was refused and an exception was taken. It may be that a new trial might have been avoided if the court had yielded to that request; but in the state of the record, the verdict may have been rendered for the defendant, not on the theory that the order of August twenty-ninth was an order to purchase, but on the erroneous theory that the plaintiffs should have purchased before October eighth and that they could have so purchased at eighty-five or eighty-six, which concededly would have left a credit balance in favor of the defendant.

The court further charged that even if the order of August twenty-ninth was to sell, plaintiffs could only charge defendant's account with the market value at the time of the repudia-

tion by the defendant or within a reasonable time thereafter, and an exception thereto was taken by the plaintiffs. The court gave other similar instructions on the question of reasonable time and again instructed the jury that, even though the order of August twenty-ninth was to sell, it was the duty of the plaintiffs when the defendant repudiated it to use reasonable efforts to reduce the loss, and plaintiffs duly excepted thereto.

If the theory of the court with reference to its being the duty of the plaintiffs to use reasonable efforts to reduce the loss, even though they were right and defendant was wrong with respect to the order of August twenty-ninth, was not erroneous, still the verdict could not stand for there is no evidence that the plaintiffs could have purchased to cover at any time after September seventeenth at a price which would have left a credit balance in favor of the defendant; and, therefore, even on that theory, the plaintiffs would have been entitled to recover, at least, on the basis of the market price of ninety- and one-half or ninety-one on September twenty-fifth, which was the only definite evidence with respect to the market price after September eighteenth when the dispute arose; for it is perfectly plain that the testimony first given by the defendant with respect to Sumatra selling at eighty-five could not have referred to the time of the interview, because he made it clear later on that at that time the stock was selling at ninety and one-half or ninety-one, and, therefore, it does not appear to what date he referred in specifying eighty-five as the price. But the theory of the court was erroneous. The court evidently had in mind the rule applicable to the conversion of stock by an unauthorized sale by brokers. (*Baker* v. *Drake*, 53 N. Y. 211.) Here, however, there was no conversion. On the theory that the brokers executed the order as given, it was a short sale and the customer did not have the stock, and, therefore, it could not be converted. (*Campbell* v. *Wright*, 118 N. Y. 594.) If the brokers did not execute the order as given, the customer, of course, had the right to repudiate their action and to insist that he be given the benefit of the order as if properly executed (*Levy* v. *Loeb*, 89 N. Y. 386); but if they executed the order *as given* by the defendant, he was not warranted in repudiating the sale, and they were not

called upon to take any action *in his behalf* upon his erroneously claiming that the order was to purchase, and they had a perfect right, if, so far as they were concerned, they were willing to take the risk, to continue to carry the account until the defendant gave an order to purchase to cover, which he did not do; and they also had a right to accept his repudiation and to take for their own account the repudiated but authorized transaction and to purchase to cover for their own account without notice to the defendant; but in that event they would have been obliged to give him the benefit of the transaction according to his claim with respect to the order, that is to give him the benefit of the order as if they had promptly executed it as an order to purchase, and they would also have had the right to refuse to recognize his erroneous claim and to continue to carry the transaction as a short sale until he withdrew his erroneous claim and gave them an order to purchase to cover, or directed them to do so without prejudice to his claim that they had improperly executed his order; and on that theory they were at liberty, as they did, to call upon him for further margin or for the stock, and on his failure to comply with such demand and on proper notice, they were within their rights in purchasing the stock at the market, at the time and place specified in the notice, to cover the short sales. (*Campbell* v. *Wright, supra; White* v. *Smith,* 54 N. Y. 522; *Gruman* v. *Smith,* 81 id. 25; *Allen* v. *McConihe,* 124 id. 342; *Rogers* v. *Wiley,* 131 id. 527; *Policastro* v. *Sprague Co.,* 175 App. Div. 417; *Birnbaum* v. *May,* 58 id. 76; *Minor* v. *Beveridge,* 141 N. Y. 399, 403; *Baker* v. *Drake,* 53 id. 211; *McIntyre* v. *Whitney,* 139 App. Div. 557; affd., 201 N. Y. 526; *Cohen* v. *Rothschild,* 182 App. Div. 408, 417, 418. See, also, *Hurt* v. *Miller,* 120 App. Div. 833; affd., 190 N. Y. 553.)

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.