Van Voorhis, J. (dissenting).
The question presented to us on this appeal is whether plaintiffs were entitled to summary judgment. Defendant-appellant contends that he is entitled to a trial in order to resolve what he asserts are at least ambiguities in the written agreement on which he has been held, as well as concerning the measure and amount of damage. In both of these respects it seems to me that he is correct. To induce plaintiffs to sell their business to Lionel, appellant entered into an agreement for the repurchase personally of portions of the Lionel stock which they were to receive in payment. This repurchase agreement is in the form of a letter dated June 29, 1961, the second and third paragraphs whereof read as follows :
“2. In addition to the foregoing undertaking with respect to the shares which it is anticipated ‘ may be publicly offered by you ’, I make the following commitment:
“ If the total net proceeds to you from any sale of said 30,500 shares shall be less than $800,000, I shall, upon twenty (20) days written notice to you, purchase from you that number of additional shares of The Lionel Corporation at $17.78 per share *770 as will make the total of the net proceeds to you under paragraph 1 and the purchase by me under this paragraph equal $800,000. In connection with any purchase by me under this paragraph 2, I shall furnish you with an investment letter as above in paragraph 1(a) provided.
“ 3. Your notice to me requiring to make either (i) the purchase required by paragraph 1(a) or 1(b), or (ii) the purchase required by paragraph 2 shall be given to me or prior to January 25,1962, and if not so given, my obligation hereunder shall be at an end.”
Appellant’s obligation under these paragraphs is measured by and contingent upon a deficiency between the proceeds realized by plaintiffs from a sale of the 30,500 shares previously identified' in the agreement and $800,000. In point of fact no sale of said shares or any shares had been made by plaintiffs prior to their making the written demand for repurchase on January 17, 1962 which was one week before the last date specified in the agreement on which such a demand could be made. The agreement stated that the number of shares which appellant was to be obliged to repurchase at $17.78 per share was to bo measured by the number which would be required at that price to make up $800,000 after crediting the proceeds of sale of said 30,500 shares. The right to demand that appellant repurchase any of these shares expired January 25, 1962, and repurchase was to be effectuated not later than 20 days thereafter. Any damages which arose from the breach of this agreement through appellant’s refusal to repurchase must be computed from the date of the breach. This appears plainly from the cases holding that stocks are within the definition of goods under section 145 of the Personal Property Law (now Uniform Commercial Code, § 2-708) under which an action for the purchase price will no longer lie and the parties are confined to an action for damages (Agar v. Orda, 264 N. Y. 248; Bishop v. Tracy & Co., 237 App. Div. 496; Coyne v. Chatham Phenix Nat. Bank & Trust Co., 155 Misc. 656). This measure of damages is held to apply to breaches of contract for the sale of stocks (Feltman v. Manesse, 241 App. Div. 839, affd. 266 N. Y. 457; Sutcliffe v. Potts, 88 N. Y. S. 2d 55, affd. 277 App. Div. 751; Wyllys Co. v. Nixon, 165 App. Div. 373; Sloan v. McKane, 131 App. Div. 244; Wildes v. Robinson, 50 App. Div. 192). The market for Lionel stock at the middle of February, 1962, when, at the latest, damages could *771 ho measured under the applicable rules of law, was such that any loss would have been nominal. The reason on account of which this substantial judgment has been entered against appellant is that, after the time to give the written demand under this agreement had expired, 90,000 of plaintiffs’ shares of Lionel were registered with the Securities Exchange Commission, and plaintiffs sold some of these shares in 1963 for $247,800. This was more than a year after the date of the alleged breach of contract, and by then the market had fallen drastically for Lionel stock. It was hardly in the power of plaintiffs to delay in this manner and thereby augment their claim for damages. It is contended for respondents that appellant told them that he was financially unable to meet their demand and told them that if they would delay (for an unspecified time) he might be better able to do so. It is undisputed that no agreement for forbearance was made, nor could plaintiffs change the amount of damage by neglecting to press a debtor who averred that he could not pay in the hope that they might fare better by temporarily withholding suit. It would appear that their purpose in delaying for a year could not affect the measure of damage in the absence of an agreement of forbearance, but if their motivation be an issue it was at least a triable issue.
Even if there were no triable issue respecting the measure and amount of damage, as it seems to me that there clearly is, there would be and is another triable issue concerning whether under this agreement appellant is liable. Both Special Term and the Appellate Division have based their decisions against him upon extrinsic evidence, that is to say, upon conversations with defendant which the moving papers aver were to the effect that plaintiffs were to be in position where in any event they could realize $800,000 for their Lionel stock. Appellant does not concede that this was said, but simply stated in his answering affidavit that his personal agreement was sought because plaintiffs “wanted further assurances that cash would be forthcoming.” He said nothing about what these further assurances were except as they were provided by the written language of the agreement. It is the established rule that when the construction of a contract necessitates extrinsic evidence, a mixed question of law and fact is presented (Lachs v. Fidelity & Cas. Co. of N. Y., 306 N. Y. 357; Bethlehem Steel Co. v. Turner *772 Constr. Co., 2 N Y 2d 456). In the former case cited the court said at page 364: “We have never departed from our statement in Kenyon v. Knights Templar & Masonic Mut. Aid Assn. (122 N. Y. 247, 254): ‘ It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used, in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact. ’ ’ ’
There is a substantial basis in the writing for the construction which appellant places upon this agreement, viz.:
(a) If the 30,500 shares which Lionel agreed to register were not registered by November 15,1961, the plaintiffs could “ put ” the 30,500 shares to defendant upon twenty days’ notice at $17.78 per share. Defendant was required to purchase said shares or procure some other party to make the purchase within the 20-day period.
(b) If the shares had become registered and the plaintiffs were not able to effectuate a sale thereof at a price of at least $17.78 per share, they could offer such shares to defendant at $17.78. Defendant could either (i) purchase the shares within 20 days of the offer or (ii), if he failed to purchase, they were entitled to effectuate a sale and charge him with the difference.
(c) With respect to the shares referred to in (b) above — those which were to be “ publicly offered ” — defendant agreed that, if the total net proceeds were less than $800,000, he would, upon an additional 20 days’ notice, purchase that number of additional shares at $17.78, which would make the total of the net proceeds received by the plaintiffs equal to $800,000.
These parties were dealing at arms’ length; plaintiffs could without question have exercised the option given to them as summarized in paragraph (a) set forth above. The 30,500 shares in question were not registered by November 15, 1961, in which event it was contemplated that they would not be sold and plaintiffs could have required defendant to purchase them upon 20 days’ notice at $17.78 per share. They did not avail themselves of that alternative. There is, as it seems to me, a *773 substantial issue to be tried with respect to whether paragraph (c) above, which purports to summarize paragraph 2 of the agreement above quoted, applies only in event that the 30,500 shares were registered by November 15, 1961 and had been sold at some price less than $800,000 prior to the making of the demand.
For these reasons it seems to me that a triable issue has been presented and that the order appealed from should be reversed and plaintiffs’ motion for summary judgment denied.
Order affirmed.